ELH-13-0342
Exhibit 3

**AFFIDAVIT IN SUPPORT OF THE APPLICATION
FOR THE EX-PARTE ORDER FOR INTERCEPTION OF
TELEPHONIC / ELECTRONIC WIRE COMMUNICATIONS
CONVERSATIONS, SHORT MESSAGING SERVICE (SMS), MULTIMEDIA
MESSAGING SERVICE (MMS) BY LYNDON FACISCO MILLER OVER
TELEPHONIC LINES (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-
5798, (620) 388-3344 AND ANY ADDITIONAL LINES UTILIZED BY LYNDON
MILLER.**

In support of the attached Application for Order to use certain electronic devices for the purpose of intercepting and recording certain electronic/wire communications and oral communications between persons as specified therein, and more particularly a statement of facts and circumstances concerning the observations described in said application that have been, are being, and are about to be committed, your affiants, Detective Aaron Penman, Detective Thomas Gregory of the Harford County Sheriff's Office, and Detective Neil Miranda of the Maryland State Police, all currently assigned to the Harford County Task Force, each being duly sworn according to law, depose and say:

<u>**YOUR AFFIANTS BACKGROUND AND EXPERTISE:**</u>

**The name of your first affiant is Detective Aaron Penman.** Your affiant Penman has been a member of the Harford County Sheriff's Office for over thirteen years. Prior to that, your affiant was employed as a correctional officer at the Harford County Detention Center for the Harford County Sheriff's Office and United States Marine Corps as an infantry machine gunner.

Your affiant Penman has successfully completed a six-month Maryland Police Training Academy instructed by the Harford County Sheriff's Office training division and mandated by the Maryland Police Training Commission. During that course of instruction, your affiant Penman received specialized training in the identification and investigation of controlled dangerous substances violations. After completing the Training Academy, your affiant Penman was assigned to the Criminal Patrol Division for four years, during which time he made a large amount of arrests for violations of controlled dangerous substances laws. Next, your affiant Penman was assigned for approximately one year with the Harford County Sheriff's Office Gang Suppression Unit as an investigator of violent organized gang crime.

Your affiant Penman is currently assigned to the Harford County Task Force and

1

works in a covert capacity investigating middle to upper level drug investigations and cases involving drug trafficking. Your affiant Penman has been assigned to the Harford County Task Force since November of 2005.   Your affiant Penman has actively participated in or conducted numerous narcotics investigations.  Your affiant Penman has authored and/or participated in hundreds of search and seizure warrants for violations of the laws pertaining to controlled dangerous substances where illegal drugs, monies and assets were seized and persons charged with CDS violations to include felony and misdemeanor charges.

Your affiant Penman has had the opportunity to debrief both defendants and street informants. Through these debriefs and drug investigations, your affiant Penman has been able to gain firsthand knowledge of the drug culture, including methods of ingestion, concealment, packaging, prices, distribution and drug terminology through his thirteen years of law enforcement experience.

Your affiant Penman has worked with confidential informants and actively participated in numerous undercover buys of controlled dangerous substances where he was able to gain firsthand knowledge about the actions, traits, habits and terminology utilized by drug traffickers.

Your affiant Penman knows from his training and experience that organized drug dealers maintain books, records, receipts, notes, ledgers, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled dangerous substances.

Your affiant Penman avers that in the course of his training and experience in the investigation of controlled dangerous substances violations, he has found that the use and distribution of controlled dangerous substances, is a regenerative activity, that a portion of the proceeds from the sale of controlled dangerous substances is used to buy more for resale.

Further, your affiant Penman avers that, during his training and experience, it is common practice for persons involved in drug trafficking, to take items in the place of cash for drugs. These items may include, but not limited to, weapons, audio/visual equipment, appliances, and motor vehicles.

Your affiant Penman has been actively assigned to and participated in court

2

ordered wiretaps, during which he has become familiar with the operational procedures of wiretap investigations and drug terminology used by the participants on the telephone. Your affiant Penman has authored numerous court ordered wire taps in the past, and has been a plant monitor and/or conducted surveillance for dozens of court ordered wiretap investigations.   During this time, your affiant Penman has intercepted hundreds of telephone calls pertaining to illegal distribution of narcotics.  Based on these intercepted telephone calls, dozens of persons have been successfully charged and convicted of felony drug charges.  Furthermore, based on court ordered wiretap investigations in which your affiant Penman has authored or participated in, hundreds of thousands of dollars in United States currency, along with assets and large quantities of narcotics have been seized.

Your affiant Penman has successfully completed hundreds of hours of narcotic training from several schools to include but not limited to Top Gun Narcotic Investigator's Course at the Northeast Counter Drug Training Center, Drug Enforcement for the Patrol Officer, Detecting the Drugged Driver, Current Drug Trends, Methamphetamine Laboratories and John Reid's Street Crime Seminar.  Furthermore, your affiant Penman has received additional instruction from the Mid Atlantic Great Lakes Organized Crime Law Enforcement Network (MAGLOCLEN).    Your affiant Penman is also a certified Maryland Police and Corrections Training Commission Instructor.

Your affiant Penman has attended a two month narcotic detector K – 9 course, provided by the New Castle County Police K – 9 Training Unit.  During this time, your affiant Penman trained a certified narcotics detector dog and was certified as a K – 9 handler.  Since the completion of the initial K – 9 training course, your affiant Penman along with his certified detector dog "Ginger" have been nationally certified through the National Police Canine Association.  Based on training and certifications, "Ginger's" field usage has resulted in over sixty arrests; and the seizure of large amounts of cocaine, marijuana, heroin, methamphetamines, guns and United States currency.

**The name of your second affiant is Detective Thomas Gregory.** Your affiant Gregory is a graduate of Johns Hopkins University and possesses a Master's of Science Degree in Management. Your affiant Gregory has been a member of the Harford County

W1-0013

Sheriff's Office for over eleven years.  Prior to that, your affiant Gregory was employed as a Police Officer at the Town of Bel Air Police Department for approximately four years, and a Police Officer with the Village of Hudson Falls Police Department in Upstate New York for three years.  As a lateral hire with the Town of Bel Air Police Department, your affiant Gregory has successfully completed the six week MPCTC comparative compliance training hosted by the Prince Georges County training academy. Your affiant Gregory also successfully completed a six-month New York State Police Training Academy instructed by the Village of Hudson Falls Police Department training division and mandated by the New York State Bureau of Municipal Police.  During that course of instruction, your affiant Gregory received specialized training in the identification and investigation of controlled dangerous substances violations.  After completing the Training Academies, your affiant Gregory was assigned to the Criminal Patrol Division for thirteen years, during which time your affiant has made hundreds of arrests for violations of controlled dangerous substances laws.  Your affiant Gregory was assigned for approximately three years with the Harford County Sheriff's Office Community Action Response Team as an investigator of violent organized gang crime.

Your affiant Gregory is currently assigned to the Harford County Task Force and works in a covert capacity investigating middle to upper level drug investigations and cases involving drug trafficking. Your affiant Gregory has been assigned to the Harford County Task Force since February of 2011.   Your affiant Gregory has actively participated in or conducted numerous narcotics investigations.  Your affiant Gregory has authored and/or participated in hundreds of search and seizure warrants for violations of the laws pertaining to controlled dangerous substances where illegal drugs, monies and assets were seized and persons charged with CDS violations to include felony and misdemeanor charges.

Your affiant Gregory has had the opportunity to debrief both defendants and street informants. Through these debriefs and drug investigations, Your affiant Gregory has been able to gain first-hand knowledge of the drug culture, including methods of ingestion, concealment, packaging, prices, distribution and drug terminology through his thirteen years of law enforcement experience.

Your affiant Gregory has worked with confidential informants and actively

4

participated in numerous undercover buys of controlled dangerous substances where he was able to gain first-hand knowledge about the actions, traits, habits and terminology utilized by drug traffickers.

Your affiant Gregory knows from his training and experience that organized drug dealers maintain books, records, receipts, notes, ledgers, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled dangerous substances.

Your affiant Gregory avers that in the course of his training and experience in the investigation of controlled dangerous substances violations, he has found that the use and distribution of controlled dangerous substances, is a regenerative activity, that a portion of the proceeds from the sale of controlled dangerous substances is used to buy more for resale.

Further, your affiant Gregory avers that, during his training and experience, it is common practice for persons involved in drug trafficking, to take items in the place of cash for drugs. These items may include, but not limited to, weapons, audio/visual equipment, appliances, and motor vehicles.

Your affiant Gregory has been actively assigned to and participated in court ordered wiretaps, during which he has become familiar with the operational procedures of wiretap investigations and drug terminology used by the participants on the telephone. Your affiant Gregory has co-authored court ordered wire taps in the past, and has been a plant monitor and/or conducted surveillance for dozens of court ordered wiretap investigations.   During this time, your affiant Gregory has intercepted hundreds of telephone calls pertaining to illegal distribution of narcotics.  Based on these intercepted telephone calls, dozens of persons have been successfully charged and convicted of felony drug charges.   Furthermore, based on court ordered wiretap investigations in which your affiant has authored or participated in, hundreds of thousands of dollars in United States Currency, along with assets and large quantities of narcotics have been seized.

**The name of your third affiant is Trooper First Class Neil J. Miranda** of the Maryland State Police, currently assigned to the Harford County Task Force.   Your Affiant has been a police officer for approximately fifteen years and has attended yearly

5

in-service training courses each year. Your Affiant has been a member of the Drug Enforcement Division for approximately three years. In July 1996 your Affiant attended the 26-week Maryland State Police Academy that included courses of training in Constitutional Law, Maryland State Law, and the enforcement of the controlled dangerous substance laws of Maryland. In January 1999, your Affiant attended a two-day training course, Street Survival '99, provided by Caliber Press in which there was a significant focus in the area of detection and identification of street level narcotics. In November 2000, your Affiant attended a three-day course entitled Strategies for Criminal Interdiction provided by the Education and Training Division of the Maryland State Police. The course of study focused heavily on the techniques employed by drug traffickers and proactive enforcement by police. In September 2002, you Affiant attended a week-long Interview and Interrogation School provided by the Maryland State Police at the Professional Development Unit. Between September 1997 and February 2008, your Affiant has been assigned to the Maryland State Police Bel Air Barrack in the role of uniformed patrol. During this time, your Affiant has handled and assisted on numerous calls for service that involved various violations of the controlled dangerous substance laws of this state. In February 2008, your Affiant was assigned to the Kent County Narcotics Task Force where he received training in current drug laws of the State of Maryland as well as all aspects of controlled dangerous substance investigations. In April 2008, your Affiant attended and successfully completed, the week-long "Top Gun" Undercover Drug Law Enforcement Training hosted by the National Counter Drug Training Center and the Maryland State Police. This training covered the numerous aspects of covert drug investigations as well as courtroom preparation and presentation. In May 2008, your Affiant attended an eight-hour course presented by the Cecil County Department of Emergency Services in regards to clandestine drug labs. This course of study focused mainly on current clandestine lab trends and how to recognize a clandestine lab, with a heavy focus on methamphetamine labs and methamphetamine use. In May 2008, your Affiant attended a two-day course entitled Indoor Marijuana Investigator's Course, offered by the Midwest Counterdrug Training Center. In addition, your Affiant continued this course of study with an eight hour training course entitled outdoor Aerial Spotting, during the same week. These two training courses focused

6

exclusively on all aspects involved in the cultivation, identification and eradication of both indoor and outdoor marijuana grow sites. This training further exposed your Affiant to both indoor and outdoor controlled marijuana grows and allowed your Affiant the opportunity to spot and identify a controlled grow from an aerial view. In September 2008, your Affiant attended the Narcotic Investigators Information Sharing Conference hosted by the Middle Atlantic-Great Lakes Organized Crime Law Enforcement Network (MAGLOCLEN). This conference consisted of three days of instruction on various drug related law enforcement techniques to include highway drug interdiction, roadside interrogation and hidden compartments, pharmaceutical drugs, narcotic enforcement in relationship to gangs, and proper planning and execution of undercover operations. In October 2008, your Affiant attended the two-day course entitled Basic Audio Intercept for Law Enforcement. This course offered both classroom participation and practical application of various types of sophisticated surveillance equipment, to include, but not limited to, a heavy focus on body wires. In April 2009, your Affiant was reassigned to the Harford County Task Force. In June 2009, your Affiant attended an eight hour course offered by Signal 13 Training entitled Advanced Narcotics Investigations. This workshop consisted of training in developing and managing informants, financial and asset forfeiture investigations, recognition and interpretation of drug ledgers, developing and prosecuting conspiracy investigations, and many aspects of cell phone exploitation.

In September 2010, your Affiant attended the 20th annual Narcotic Investigators Information Sharing Conference hosted by the Middle Atlantic-Great Lakes Organized Crime Law Enforcement Network (MAGLOCLEN). This conference consisted of three days of training on various drug related law enforcement techniques to include various gang and cartel drug trafficking trends, digital resources and surveillance, highway drug interdiction, roadside interrogation and hidden compartments, pharmaceutical drugs, regional drug prices and current drug-related trends, and the proper planning and execution of undercover drug buys and takedowns.

During his time as a member of the Drug Enforcement Division, your affiant has been a part of five wiretap investigations. During these wiretap investigations, your affiant has either been a plant monitor or a member of surveillance. Your affiant has overheard thousands of intercepted telephone conversations that pertain to illegal drugs.

7

and money. Based on these intercepted telephone calls, your affiant has gained a great knowledge of the type of cryptic and coded conversations drug dealers often utilize while arranging drug transactions over the telephone.

All of the aforementioned training included instruction in the identification and investigation of controlled dangerous substance violations, prices, methods of packaging, concealment, terminology, methods of consumption, effects of controlled dangerous substances, methods of distribution, and/or routes of import and distribution. Your Affiant has actively participated in the service of over one hundred search and seizure warrants. Your Affiant has arrested or assisted in the arrest of numerous persons for violations of the controlled dangerous substance laws of this State and has followed through with these cases to see convictions.

## PREMLIMINARY INVESTIGATIVE OVERVIEW:

Since November of 2011, the Harford County Task Force has received information regarding a subject by the name of "Charlie" selling significant quantities of cocaine, marijuana and heroin, which are schedule I and II controlled dangerous substances, in Harford and surrounding counties of Maryland. During the course of this investigation, several co-conspirators have been identified and evidence has been obtained pursuant to surveillances, various records checks, informant information, and information from Pen Registers/Dialed Number Recorders (DNR), as well as controlled buys of controlled dangerous substances by a confidential informant. During the investigation, "Charlie" was identified as Lyndon Facisco MILLER.

To date, your affiants have utilized the assistance of three confidential informants, referred to in this affidavit as CI#1, CI#2 and CI#3 and two confidential sources, referred to in this affidavit as CS#4 and CS#5. The confidential informants are former users or dealers of controlled dangerous substances. The informants are familiar with various types of CDS, drug terminology, methods of packaging, methods of ingestion, distribution and trafficking, street and wholesale prices and weights. The informants have supplied drug information in the past that has been corroborated by your affiants or related case investigators and the information has been found to be reliable.

While the use of these confidential informants has proven invaluable, the informants will never be able to infiltrate the upper echelon of Lyndon MILLER'S drug

8

distribution organization.

The lead drug distributor heading this criminal drug conspiracy has been identified as the following:

1) Lyndon Facisco MILLER, is described as a black, Jamaican male, 5'7"tall, weighing 195 lbs, with a date of birth of May 11, 1965, who is believed to be residing at 4509 Lyons Run Circle, Apartment 303, Owings Mills, Maryland 21117.

The investigation, which will be detailed in this affidavit, has revealed that Lyndon MILLER is obtaining quantities of cocaine and re-distributing large amounts to others, both known and unknown at this time. Your affiants know that MILLER is utilizing at least three phones to communicate with members of this illegal drug organization and with the intent to elude law enforcement. This investigation has not produced the evidence sought by your affiants which is required to fully identify all co-conspirators involved in this illegal drug organization, their roles within the organization, and the suppliers of the controlled dangerous substances. This investigation has revealed that MILLER is careful to avoid detection by law enforcement and is cognizant of some of the techniques used by law enforcement.

Through the course of this affidavit, your affiants will detail the past and current investigations of MILLER. Your affiants will outline facts and beliefs of this case in the form of a time line. Your affiants will provide past arrest and details of incidents involving MILLER and co-conspirators. Your affiants will provide analysis of the dialed number recorders of MILLER'S phones and the information pertaining to some of the associates contacting MILLER. Finally, your affiants will describe the exhausting investigative measures that were conducted or were unavailable during this investigation.

It is noted that throughout the investigation, controlled drug purchases were conducted. Before and after each controlled drug purchase, the informant was searched and found to be free of any drugs, money or paraphernalia by case affiants. The exact date, amount of cocaine purchased, the cost and some locations are not included in the affidavit for the protection of the confidential informant.

## YOUR AFFIANTS WILL NOW DETAIL THE FACTS OF THE INVESTIGATION INTO THIS DRUG ORGANIZATION:

W1-0019

Since November of 2011, the Harford County Task Force has received information regarding a subject by the name of "Charlie" selling large amounts of cocaine. The information received was from three separate proven reliable confidential informants and two confidential sources.   Listed below is the detailed information provided by each informant. Each informant is assigned a number and referenced as such throughout the affidavit.

**Information provided by Confidential Informant #1 (CI#1)  regarding "Charlie":**

| | |
|---|---|
| *Description:* | Black male, approx. 50 YOA, 5'8 or 5'9, smaller build, short hair, dark skin, believed to be Jamaican because of accent.   Wears dress cloths. |
| *Phone Numbers:* | (570) 540-0509, (443) 545-4592, (301) 501-2915 |
| *Address or Area of Operation:* | Unknown, but has indicated that he lives in Cecil County, Maryland.   Normally takes about an hour to get to arranged drug deals. |
| *Vehicle:* | Always different cars, believed to be rentals. |
| *Drug:* | Cocaine, Marijuana and has asked in the past if CI#1 needed heroin. |
| *Level of Dealer:* | Kilograms. CI#1 has purchased ounces from "Charlie". |
| *Source:* | CI#1 believed that "Charlie" obtained cocaine from Georgia. |
| *Miscellaneous Notes:* | "Charlie" changes phone numbers routinely. Normally wants to conduct drug deals in the evenings, when traffic is heaviest. |

**Information provided by Confidential Informant #2 (CI#2)  regarding "Charlie":**

| | |
|---|---|
| *Description:* | Jamaican male, approx. 45 YOA, 6'0, medium build, close cut hair.   Wears expensive clothes. |

10

W1-0020

| | |
|---|---|
| *Phone Numbers:* | Cell number not totally known, may start with (571). |
| *Address or Area of Operation:* | Somewhere in Cecil County, Maryland. |
| *Vehicle:* | Maroon Ford Expedition, unknown tags. |
| *Drug:* | Cocaine |
| *Level of Dealer:* | Distributing Kilograms. Supplying ounce quantities of cocaine. |
| *Source:* | Unknown |
| *Target Associates:* | Charlie is selling multiple ounces to Aubrey, who lives on Route 1, near Dublin Road. Aubrey's mother is selling pills. |

**Information provided by Confidential Informant #3 (CI#3) regarding "Charlie":**

| | |
|---|---|
| *Description:* | Black older male, sounds Jamaican. |
| *Phone Numbers:* | (570) 540-0509 |
| *Address or Area of Operation:* | Cecil County, Maryland, possibly North East. |
| *Vehicle:* | Unknown. |
| *Drug:* | Cocaine. |
| *Level of Dealer:* | Kilograms. Selling ounces for $1600.00 each. Can provide any quantity needed. |
| *Source:* | Unknown |
| *Miscellaneous Notes:* | "Charlie" changes phone numbers alot. |

Along with the confidential informants, two confidential sources have provided information pertaining to a Jamaican believed to be "Charlie". Listed below are the details of that information obtained by the sources:

**Information provided by Confidential Source #4 (CI#4) regarding a "Jamaican":**

11

W1-0021

- Deputy David McDougall, of the Harford County Sheriff's Office, assigned to the Violent Street Crimes Unit, received information from a confidential source (herein after referred to as CS#4) pertaining to a subject believed to be "Charlie". CS#4 indicated to Deputy McDougall that Cresta Spinks, a known Harford County resident involved in criminal activity, is purchasing ounces of cocaine from a Jamaican living in Cecil County, Maryland.

**Information provided by Confidential Source #5 (CI#5) regarding a "Jamaican":**

- On January 19, 2012, the Harford County Task Force was conducting a residential search warrant in Harford County, Maryland. While at the residence, Detective Battee and Sgt. Rosyter debriefed one of the suspects of the investigation (herein after referred to as CS#5). CS#5 advised the he/she frequently purchased multiple ounces of cocaine from a subject that he/she knew only as the "Jamaican". CS#5 said that he/she believed that the Jamaican lived somewhere in northern Harford County and would deliver the cocaine right to the house. CS#5 also stated that when he/she purchased multiple ounces of cocaine, he/she would pay for one or two at a time and then get one or two ounces up front and pay for them later. CS#5 added that he/she could no longer purchase cocaine from the Jamaican because he/she owes him a couple thousand dollars and the Jamaican would not sell CS#5 cocaine until the debt has been paid.

The amount of drug information gained for "Charlie" is compelling. Not only is the information obtained detailed, but all three confidential informants and two sources, whom have no knowledge of each other, provided similar information. This includes name, phone number, description, cost of cocaine and suspected area of residence for "Charlie". This led your affiants to believe the information alleged is accurate.

12

W1-0022

To expound on the information CI#2 provided, On Wednesday November 9th, 2011 your affiant Gregory met with CI#2.  CI#2 advised that a Jamaican male is supplying multiple ounces of cocaine to a subject by the named "Aubrey".  The Jamaican male delivers cocaine to "Aubrey's" residence on Route 1, near Dublin Road (later found to be 4200 Conowingo Road in Darlington).  CI#2 indicated that "Aubrey" sells an average of a half-ounce of cocaine per day.  CI#2 also mentioned that "Aubrey's" mother is selling large amounts of Percocet pills from their residence on Route 1, near Dublin Road.

Through investigation, your affiant Gregory identified "Aubrey" as Aubrey Stevenson Akers Jr., a white male, 5'7, 175 pounds, having a date of birth of September 3, 1980 of 4200 Conowingo Road, Lot 8, Darlington, Maryland 21034.  Your affiant Gregory identified Aubrey's mother as Nancy Lee Akers, white female, 5'03", 150lbs, date of birth 09/12/1961 of 4200 Conowingo Road, Lot 8, Darlington, MD 21034.  Your affiant Gregory also found that Michael Dean Akers is also living at this Conowingo Road address.

While the information provided by CI#2 was unable to be developed into a case, your affiant Gregory was able to establish a narcotics investigation into this address in March of 2013.  During the first week of March 2013, your affiant Gregory working in a covert capacity established a relationship with Michael Dean Akers.  Your affiant Gregory learned that Michael Akers is selling cocaine from the residence of 4200 Conowingo Road Darlington, Maryland 21034.  Your affiant Gregory also knows that typically, cocaine, crack cocaine and illegal prescription narcotics are being sold from this location.

During the investigation, your affiant Gregory conducted two crack cocaine purchases from Michael Akers.  Those purchases took place during the second and fourth week of March, 2013.  On each occasion, your affiant Gregory made contacted with Michael Akers in reference to conducting a cocaine transaction.  Both transactions occurred next to the New England Pizza located at 4202 Conowingo Road Darlington, Maryland 21034.  Your affiant Gregory is aware that Michael Dean Akers resides in the trailer located at 4200 Conowingo Road lot 8, which its property line sets directly behind New England Pizza.

13

W1-0023

Through a Maryland Vehicle Administration check, your affiant Gregory discovered that Michael Dean Akers, a white male, described as 5'07" tall, weighing 155 lbs, with a date of birth of 10/19/1985 listed an address of 5210 Brookwood Road Baltimore, Maryland 21225.

Your affiant Gregory also caused a check to be made for the current criminal history of Michael Dean Akers. During the check, your affiant Gregory discovered that Michael Akers has a criminal history in Maryland with no known aliases. Listed below are the listed charges for Akers.

| Date | Charge | Agency |
|---|---|---|
| 06/27/2011 | Theft: Less $1,000 | MSP Easton |
| | Mal Dest Prop Value | |
| | Con-Mal Dest Prop Value | |
| 03/12/2011 | CDS: Possess-not Mairjuana | MSP Bel Air |
| | CDS: Poss Para | |
| 02/05/2008 | Theft less than $100.00 | Harford Co. Sheriff |
| | Rogue and Vagabond | |
| | Cred Card: Steal | |
| | Crdt Crd/ Anthr Chg (4 count's) | |
| | Theft- Scheme: $500 Plus | |
| 11/09/2007 | Theft: Less $500 Value | Anne Arundel Cnty PD |
| | Rogue & Vagabond | |
| | CDS: Poss Paraphernalia | |
| 09/25/2007 | Theft: Less $500 Value | Anne Arundel Cnty PD |
| 06/10/2007 | Att-Burglary-First Degree | MSP Bel Air |
| | Mal Dest Prop/Value | |

Based on this investigation and information provided by CI#2, your affiants believe that Aubrey, Michael and Nancy Akers are all selling illegal drugs from 4200 Conowingo Road, lot 8, Darlington, Maryland. Further, your affiants believe that this address is being supplied cocaine by Lyndon MILLER.

14

W1-0024

During the second week of April, 2013, your affiants Penman and Gregory met with CI#1. While your affiants were present, CI#1 contacted "Charlie" by calling his cell phone number (443) 545-4592. "Charlie" answered the phone and the two engaged in a drug conversation. During the call, arrangements were made for "Charlie" to provide CI#1 with multiple ounces of cocaine in exchange for United States currency. The drug exchange was scheduled to take place in an hour of the phone call at a predetermined location.

During the next hour, preparations were made to conduct the drug exchange. The currency was prepared and recorded. CI#1 was provided with the United States currency to conduct the drug exchange. Your affiants Penman and Gregory remained in a position to witness the drug exchange. A covert recording device was positioned in a manner to video and audibly record the encounter. CI#1 was notified of the recording and agreed and signed the consensual monitoring form. Members of the Harford County Task Force positioned themselves in the area of the drug meet to conduct surveillance once "Charlie" departed the location.

Near the prearranged time, "Charlie" arrived operating a silver Chevy Captivia, bearing Maryland registration 9AZ0080. The vehicle was found to be a rental car, owned by Dollar/Thrift Rent A Car. "Charlie" exited the vehicle and made contact with CI#1. CI#1 and "Charlie" engaged in a drug deal. CI#1 provided "Charlie" with the United States currency in exchange for multiple ounces of cocaine. During conversation, your affiants recognized that "Charlie" spoke with a Jamaican accent. Following the deal, "Charlie" departed the area.

Once "Charlie" departed, surveillance members followed him to a second location in Harford County. Unfortunately, "Charlie" was lost during mobile surveillance.

Later that evening, the cocaine was transported to the Harford County Task Force and examined. Your affiant Penman administered a field test of the purchased white powdery substance, which resulted in a positive reaction to the presence of cocaine.

Following the drug buy, your affiant Penman contacted Dollar/Thrift rent a car, security division to obtain information for the vehicle operated by "Charlie". Dollar/Thrift reported the vehicle "Charlie" was driving, a 2013 Cheverolet Captiva

15

bearing Maryland Registration 9AZ0080, was rented by a customer providing the following information:

> Lyndon MILLER
> 501 New York Avenue,
> Brooklyn, New York 11225
> Phone number: 443-987-0989
> DOB: 05/11/1965
> Soundex: 701665771 / NY
> Employer: Verizon, Hanover in Maryland

The vehicle was rented from the Dollar rent a car office, located at 7410 New Ridge Road, Hanover Maryland on April 8, 2013. The vehicle was scheduled to be returned on April 15, 2013 at Baltimore Washington International airport.

Dollar/Thrift also informed your affiant Penman that Lyndon MILLER has a long history of renting vehicles. Dollar/Thrift forwarded the rental records to your affiant Penman. The records revealed, dating back to 2011, that Lyndon MILLER has almost constantly rented vehicles each week. Your affiant Penman knows through his training, knowledge and experience that drug dealers commonly use rental cars to distribute drugs. Using rental cars provides several advantages for drug dealers. A rental car cannot be seized if or when a dealer is caught selling drugs. Further, a rental vehicle is normally an ordinary car with no distinguishing features that would catch the attention of law enforcement. Plus, rental cars can also be turned in and exchanged for other vehicles periodically or if the dealer feels they gained too much attention or are being investigated.

Initially, your affiants could find no driving record or photos in Maryland or New York for Lyndon MILLER. During a national criminal history check, your affiants located Lyndon Facisco MILLER, a black male, 5'7, 195 pounds, having a date of birth of May 11, 1965. The check revealed the following criminal history for MILLER in Maryland and Ohio.

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 02/12/1998 | Fugitive from Justice | Baltimore City Police Department |
| 06/26/1998 | Drug Trafficking Possession of drugs | Hamilton County, Ohio |

16

| 09/22/1997 | Drug Trafficking | Cincinnati Police Department |
|---|---|---|
| 08/18/1997 | Drug Abuse | Cincinnati Police Department |

Your affiant Penman contacted Hamilton County Sheriff's Office and spoke with the records division.  Hamilton County forwarded a copy of two arrest reports and photograph of MILLER for drug incidents in 1997.  Listed below are brief details of the arrest provided by Hamilton County Sheriff's Office.

*On August 18, 1997, agents executed a search warrant at 287 McCormick Place in Cincinnati, Ohio.  Agents recovered a large amount of U.S. Currency and Approximately 45 – 50 pounds of marijuana.  Agents recovered a rental car utilized by Lyndon MILLER to transport marijuana from New York to Cincinnati.  Prior to execution of the search warrant, agents stopped a co-defendant, Mario MILLER exiting 287 McCormick Place in possession of nine pounds of marijuana.*

*On September 22, 1997 Lyndon F. MILLER sold approximately 37 pounds of marijuana to another subject.*

Comparing the photo provided by Hamilton County Sheriff's Office to the video footage of the controlled buy, your affiants positively identified Lyndon Facisco MILLER as "Charlie", the subject who sold CI#1 multiple ounces of cocaine.

Your affiants conducted a NCIC criminal history inquiry for Lyndon MILLER'S co-defendant and possible relative, Mario MILLER. Your affiants located Mario Lee MILLER, a black male, 6'2, possessing a date of birth of October 24, 1962, having a last reported address of 1446 Meadowbright Lane in Cincinnati, Ohio. The criminal history check for Mario MILLER revealed the following arrest in Ohio:

| Date | Charge | Agency |
|---|---|---|
| 11/28/2002 | Possession of felony Cocaine<br>Tampering with evidence Felony<br>Assault on police<br>Possession of drugs | Cincinnati Police Department |
| 09/20/1982 | Theft Felony | Cincinnati Police Department |

W1-0027

Using the law enforcement address database, your affiants conducted a check for Lyndon MILLER. Your affiants could find no current Maryland addresses for Lyndon MILLER.

Your affiants conducted a Maryland Automated Wage benefits for the reported income of Lyndon Facisco MILLER. The check was made using MILLER'S social security number 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, which was listed during his 1997 Ohio arrest. The check revealed no wage history in the state of Maryland.

On April 12, 2013, your affiants applied for an order for the installation and use of a Pen Register/Trap and trace for the telephone numbers believed to be utilized by MILLER, (570) 540-0509, (443) 545-4592, (301) 501-2915. The DNR/Pen Register order and application were reviewed and signed by the Honorable Elizabeth Bowen and William O. Carr, Judges of the Circuit Court for Harford County.

Since the installation of the pen register/trap and trace of the above phone numbers, your affiants have monitored phone towers, analyzed phone numbers and patterns. The early examination of the phone tower locations for MILLER'S phones, show that during the majority of the late night and early mornings, the phones are utilizing towers in the area of Owings Mills/Randallstown, west of I – 795 in Baltimore County, Maryland. This discovery led your affiants to believe that MILLER is residing somewhere in that area. The belief conflicts with the information provided by the confidential informants, whom reported that MILLER is residing in Cecil County. This contrary finding is not uncommon. Drug dealers generally try to maintain anonymity between their buyers for protection. This provides some security if their buyers ever cooperate with law enforcement authorities. To support the secrecy, dealers will lie to buyers. This belief is apparent by MILLER informing all his known buyers that his name is "Charlie" and lives in Cecil County, which both were incorrect.

In addition to a possible address, the pen register/trap and trace analysis revealed several more behaviors that are indicative of drug dealing. Detective Penman will describe several indicators that led investigators to believe that MILLER is a drug dealer, operating a large scale drug organization.

The first indicator is the amount of phones believed to be used by MILLER. Drug dealers commonly have multiple phones to conduct their day to day drug dealing

W1-0028

operations. These phones serve a multitude of purposes, such as assigned phones for certain buyers, suppliers and personnel business. Your affiants also have knowledge that drug dealer phones are sometimes short lived. Drug dealers are aware that telephonic investigations are an effective tool utilized by law enforcement. Therefore, dealers often change phone numbers to thwart the risk of identification and police investigation, such as wiretap interception. In regards to MILLER, confidential informants have already indicated that he routinely changes phone numbers.

Secondly, subscriber information was requested for each phone line believed to be used by MILLER. The inquiry revealed that each phone is not subscribed in his name. Early indications are that the phones used by MILLER are over the counter phones that require no identification to purchase. Your affiants know that drug dealers often obtain pre-paid cellular telephones that are not subscribed in the true identity of the user, nor their true address as an additional effort to avoid police detection.

Finally, one of MILLER'S phone lines, 301-501-2915, is uniquely used. During early analysis, your affiants found that this phone line had only been utilized for two days, on April 13 and April 15, 2013. This led your affiants to believe that MILLER routinely turns this phone off. Further, early investigation showed that this phone has only been used to communicate with one New York exchange phone number, 347-237-8237. In addition, on the evening of April 13, 2013, the towers revealed that MILLER'S 301-501-2915 phone traveled to New York City. It appeared the trip was short in duration and MILLER and/or his phone may have returned late that night or early the next morning. Your affiants found that the other two phone lines utilized by MILLER showed no record of the New York trip, indicating that those phones may have been turned off.

This short trip is consistent with a drug resupply run. Your affiants know that New York City is a source location for drugs. During your affiants tenure's with the Harford County Task Force, investigations have been conducted in which drug dealers have obtained large amounts of drugs from New York City or surrounding areas. While the argument can be made that MILLER is from New York City and may have been visiting family members, your affiants would offer that the length of the trip, the turning off of two of his phones, the turning on of the 301-501-2915 phone, which may be his

W1-0029

drug supplier phone; and the past history involving MILLER traveling to New York to obtain drug resupply in 1997, leads your affiants to believe that he may have conducted a drug resupply trip.

Further, this leads your affiants to believe that MILLER'S phone number 301-501-2915 may solely be used for the purpose of communicating with his drug supplier. As previously mentioned some drug dealers have multiple phones and assign one phone exclusively to the supplier. This precaution provides a barrier between the phone the dealer uses for the buyers, should it become compromised by law enforcement, and the supplier.

On Monday April 22, 2013 your affiant Penman and Gregory analyzed cell phone towers for phone number (443) 545-4592. The analysis showed that Lyndon MILLER'S cell phone was utilizing towers in the area of Conowingo Road in Darlington, Harford County, Maryland. This discovery led your affiants, along with other members of the Task Force, to conduct surveillance in the Conowingo Road and Darlington area in hopes of observing Lyndon MILLER interact with his underlings for the sale and distribution of drugs. To assist with locating MILLER, your affiants were aware from continuous communication with Dollar/Thrift security management, that Lyndon MILLER was renting, at the time of this surveillance, a 2013 Nissan Altima, bearing Maryland registration 3BA4664.

At approximately 1610 hours, your affiants observed a 2013 silver Nissan Altima bearing Maryland registration 3BA4664, at the stop sign on Arena Road at Conowingo Road, just south of Darlington, Maryland. Your affiants identified the driver of the Nissan Altima as Lyndon MILLER. Your affiants are aware that the Harford County Task Force has received numerous drug related tips and conducted past investigations from this area of Arena Road. This led your affiants to believe that Lyndon MILLER may be supplying drugs to this region of Darlington, Maryland.

At approximately 1612 hours, surveillance members observed Lyndon MILLER travel to a mobile trailer home, located at 3416 Conowingo Road, directly behind the Ball Park Diner on Conowingo Road in Street. At approximately 1615 hours, surveillance members observed Lyndon MILLER depart from the trailer.

20

W1-0030

Your affiants know that drug houses or businesses commonly have frequent traffic. The traffic comes from routine suppliers or buyers stopping to distribute or buy drugs. This activity occurs sometimes multiple times a day. Inherently, drug deals only last a few moments, long enough to exchange United States currency for drugs. Once the deal is complete, the supplier or buyer leaves the house, business or area to prevent any unneeded attention. Based on this knowledge, investigation and observations of a short stay, your affiants believe that Lyndon MILLER may have distributed drugs to the occupants of this address.

Next, surveillance members followed Lyndon MILLER to a residence located at 564 Aubel Road in Delta, Pennsylvania. MILLER arrived at approximately 1652 hours and made contact with an unidentified white male with greying hair and mustache. At approximately 1705 hours, MILLER departed the Aubel Road address. Once again, because of MILLER'S driving mannerisms, which include driving very slow, surveillance members lost visual on the Nissan Altima and were unable to continue surveillance of Lyndon MILLER. This surveillance led your affiants to believe that MILLER is not only supplying Harford County drug dealers, but Pennsylvania as well.

On the evening of April 22, 2013, your affiants and Detective Waldsmith traveled to Owings Mills to attempt to locate an address of Lyndon MILLER. As previously explained, based on the indication of MILLER'S cell phone towers, your affiants believed MILLER resided somewhere in the area Owings Mills. Utilizing the pen register and electronic surveillance, your affiants were able to isolate MILLERs location to the 4500 block of Lyons Run Circle, located in the Owings Run Apartment complex. More particular, electronic surveillance revealed that MILLER most likely was in the apartment building of 4509 Lyons Run Circle. Your affiants also observed that Nissan Altima rented by MILLER, parked next to 4509 Lyons Run Circle, to the left side of the building.

On April 23, 2013 a Subpoena was served at the Owings Run Apartments, requesting leasing information for tenants residing on Lyons Run Circle. Upon receiving and reviewing the Lyons Run Circle leaseholders and occupants' listings, your affiants learned that building 4509, apartment 303, was being rented by Sophia Warmington,

21

W1-0031

whom listed a co-habitant of Phillip Reid.    Your affiants are aware that Lyndon MILLER'S criminal history listed several aliases, to include Phillip Reid.

This Owings Run Apartment complex provides a benefit for Lyndon MILLER. This community is a private gated community, which only provides access by entering though a security gate.  Each building is also secured by a locked door.  Any guest must request entrance from residence, by the use of an individual apartment buzzer.  As a drug dealer, this secured community is advantageous for MILLER and proves difficult to conduct surveillance.

Your affiants caused a further check of a Law Enforcement address Database and discovered that Sophia Lorraine Warmington listed an address of 4509 Lyons Run Circle, apartment 303, Owings Mills, Baltimore County, Maryland 21117.  This database also indicated that Sophia Lorraine Warmington previously owned, from February 1996 to October 2012, a previous address of 3112 Richwood Avenue Windsor Mill, Maryland 21244.  The database search of this address also indicated that Lyndon MILLER, also resided at 3112 Richwood Avenue Windsor Mill, Maryland 21244.

Your affiants also learned through Law Enforcement Database checks that Sophia L. Warmington, listed Dollar/ Thifty Rent A Car as her employer.  This finding was confirmed by a security management representative from Dollar/ Thifty Rent A Car.  It was also discovered that Lyndon MILLER has been using Sophia Lorraine Warmington's credit card for the majority of his car rentals from Dollar/ Thifty Rent A Car.

Through Maryland Vehicle Administration Check, your affiant Gregory discovered that Sophia Lorraine Warmington, a black female, described as 5'07" tall, weighing 160 lbs, with a date of birth of 10/20/67, listed an address of: 4509 Lyons Run Circle apartment 303, Owings Mills, Baltimore County, Maryland 21117.

Your affiant Gregory caused a check to be made for the current criminal history of Sophia Lorraine Warmington.  During the check, your affiant Gregory discovered that Sophia Lorraine Warmington, whose birth place is also listed as Jamaica, has a criminal history that includes theft over $300 in the year 2000 in Maryland.

On April 29, 2013 approximately 1630 hours your affiants, along with members of the Harford County Task Force, conducted physical surveillance, along with Pen Register and electronic surveillance of Lyndon MILLER and his known cell phones.

W1-0032

During the surveillance, MILLER was engaging in drug activity in the Northern area of Harford County, Maryland.    Utilizing the pen register and electronic surveillance, investigators were able to isolate two possible new phone numbers for MILLER, (302) 354-5798, (620) 388-3344.

Later that evening, physical, Pen Register and electronic surveillance was continued after MILLER returned to his residence of 4509 Owings Run Circle, Owings Mills, Maryland.   While MILLER was at his residence, investigators were again able to isolate those same two new phones numbers, (302) 354-5798, (620) 388-3344.  Based on the significant location change and the same two new phone numbers being isolated, your affiants believe that MILLER was also utilizing (302) 354-5798, (620) 388-3344 to facilitate his drug dealings.

On that same day, April 29, 2013, your affiant Penman received information from Dollar/Thrift corporate security.   The security member advised the 2012 Dodge Grand Caravan Lyndon MILLER was renting had suffered superficial damage from MILLER hitting a concrete pylon.   After the incident, MILLER completed an accident/damage report.   On the report, MILLER provided a phone number for himself of (620) 388-3344.

On May 1, 2013, your affiants applied for an order for the installation and use of a Pen Register/Trap and trace for the telephone numbers believed to be utilized by MILLER, (302) 354-5798, (620) 388-3344.  The DNR/Pen Register order and application were reviewed and signed by the Honorable William O. Carr, Judges of the Circuit Court for Harford County.

Since the installation of the pen register/trap and trace of (302) 354-5798, (620) 388-3344, your affiants have monitored phone towers and patterns.   The early examination of tower locations for MILLER'S phones, show that during the day, the phones were in Harford County and during the night, they returned to the area of MILLER'S residence.  These phone patterns are consistent with the other known phones utilized by MILLER.

Therefore, based on the electronic surveillance, the Dollar/Thrift accident report and the phone tower data, your affiants believe that in the addition to the previously known phone numbers (570) 540-0509, (443) 545-4592, (301) 501-2915, MILLER is

W1-0033

also using (302) 354-5798, (620) 388-3344, for a total of five phones used to further his drug operation.

## CASE SUMMARY

In summary, the investigation was initiated by three confidential informants and two confidential sources, all alleging "Charlie", later identified as Lyndon MILLER, is distributing large amounts of controlled dangerous substances, to include cocaine, heroin and marijuana, which are schedule I or II drugs. What was unique about the information provided, was that each informant and source had no knowledge of each other, however, provided similar information regarding MILLER'S drug operation. So much so, that the provided information was more or less corroborated.

Next, the investigation led to a controlled drug purchase of multiple ounces of cocaine from MILLER. Since the drug purchase, your affiants have learned that Lyndon MILLER almost constantly operates rental vehicles, possesses multiple phones and uses those phone consistent with drug dealing, communicates with source drug areas such as New York and California, engaged in a short trip to New York City (according to phone tower data) and possesses a criminal history, which includes possession of large amounts of drugs and obtaining those drugs from New York. Your affiants have also learned that Lyndon MILLER makes a real effort to conceal his activities and himself. Those attempts include, not owning a vehicle, not possessing subscribed phones, leaving no trail of his current address, providing an alias for his apartment and giving false information to all his drug buyers. What's also notable includes MILLER'S driving habits. Aside from driving very slow, making it difficult to follow, your affiants have identified that MILLER lives in Owings Mills, Maryland. Almost each day, MILLER'S phones indicate that he travels to Harford County for several hours. Owings Mills and the locations MILLER is frequenting are not short trips. These trips can take an hour or more depending on traffic. While many people commute to work each day, MILLER'S activities, such as what was observed during surveillance, are believed to be for the sole purpose of drug dealing.

W1-0034

For those reasons, your affiants believe that Lyndon Facisco MILLER is a significant local source of drugs for the greater Baltimore and Harford County areas in Maryland and is believed to be getting his supply from New York.

Although MILLER has been arrested many years ago, he continues to thrive by selling schedule I & II controlled dangerous substances. Your affiants have attempted all conventional means of police work in an effort to take down and dismantle the illegal drug operation of Lyndon MILLER. All of these attempts have failed to meet investigators higher goals in thoroughly dismantling MILLER'S drug distribution organization, from the supplier to the buyers. Your affiants know that in order to successfully identify the underlings of Lyndon MILLER, and his key role players within the illegal drug distribution organization, as well as to identify stash houses being maintained, locations of illegally obtained United States currency obtained by MILLER through the illegal sales of drugs, to know how and when MILLER is being resupplied, and to successfully dismantle and prosecute all of those involved in the illegal drug distribution organization before this illegal cocaine, heroin and marijuana drug organization is completely entrenched in the Harford and Baltimore County areas; is to initiate the interception of telephonic communications over the telephones number (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 and any additional telephone number currently being utilized by Lyndon Facisco MILLER.

## DNR INFORMATION:

To date, your affiants have attempted to obtain information for a large number of telephone subscribers, but they have not received many of these back from various telephone carriers. Your affiants have studied patterns within the calls and found that a large portion of the telephone numbers contacting Lyndon MILLER'S cellular telephones seem to only have contact for short durations of less than 2 minutes. They are aware that this pattern is consistent with drug activity. Your affiants have also learned that Lyndon MILLER'S phones have contacted phone exchanges in Jamaica, New York and California, which are all possible drug supply locations.

Your affiants will now address the analysis of the aforementioned Pen Registers/trap and trace devices/dialed number recorders (DNR) that have been utilized

25

W1-0035

during this investigation.

**DNR LINE INFORMATION FOR PHONE NUMBER 443-545-4592:**

This line is a Verizon Wireless cellular telephone subscribed to Mr. Brown of 295 Parkshore Drive, Folson, California 95630, currently being utilized by Lyndon MILLER. The DNR attached to this telephone number was activated on April 12, 2013. A total of 234 activations occurred between April 12, 2013 and May 1, 2013 and is currently continuing.

To date, your affiants have attempted to obtain information for numbers of telephone subscribers, but they have not received many of these back from various telephone carriers. Below is a list of the subscribers who had some of those activations and/or, are persons who your affiants believe are involved with Lyndon MILLER and his illegal drug distribution organization in this investigation, and other persons who your affiants believe are co-conspirators:

| PHONE # | ASSOCIATED TO: | TOTALCALL ACTIVATIONS: |
|---|---|---|
| 1. (443) 619-0107 | Janie Pearl Brown | 12 |
| 2. (443) 616-1089 | Cresta Michelle Spinks | 12 |
| 3. (301) 500-4098 | Nancy Lee Akers | 7 |
| 4. (443) 695-9913 | Michael Joseph Foltz | 6 |

Your affiants will now address the persons and places associated with these telephone numbers as they relate to this investigation:

**(443) 621-0107:**

Your affiants have not received telephone subscriber for this phone number, however through investigation have discovered that Janie Pearl Brown is using this number. The Harford County Task Force is familiar with Janie Brown and has investigated her in the past for selling large amounts of cocaine.

Through a routine Maryland Vehicle Administration Check, your affiants discovered that Janie Pearl Brown, a white female, weighing 293 lbs, 5'7 tall, having a date of birth of March 25, 1959 listing an address of 1575 Main Street Cardiff, Maryland

W1-0036

21160.

A Maryland criminal history check was conducted using the Maryland Criminal Justice Information System (CJIS) on Janie Brown, which revealed the following arrests:

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 10/12/2007 | CDS: Poss. W/Int Dist. Narc. | Harford Co. Sheriff's Office |
| 04/18/90 | Dist. CDS | MSP Narcotics Unit, Jessup |
| | Poss. CDS | Harford Co. Circuit Court |
| 02/28/90 | Poss. W/I Dist | Harford C. Circuit Court |
| | Poss. W/I Dist. | |
| 01/26/90 | CDS: Manufact./Distribute | MSP Narcotics Unit, Jessup |
| 07/12/88 | CDS-Unlawful MFGR | Harford Co. Sheriff's Office |
| | CDS-Unlawful Poss. | |
| | CDS-Unlawful Poss. | |
| | CDS-Para/Use Poss. W/ Intent | |

Furthermore your affiants know through the DNR Analysis that this cellular number is contacting or being contacted by the cellular telephone(s) being utilized by Lyndon MILLER.

**(443) 616-1089:**

Your affiants have not received telephone subscriber for this phone number, however using a law enforcement research database, discovered that this phone is being utilized by Cresta Michelle Spinks.

The Harford County Task Force is familiar with Cresta Spinks as routine criminal offender in Harford County, Maryland. Further, as previously mentioned, Deputy David McDougall, of the Harford County Sheriff's Office, assigned to the Violent Street Crimes Unit, received information from CS#4 pertaining to a subject believed to be "Charlie". CS#4 indicated to Deputy McDougall that Cresta Spinks is purchasing ounces of cocaine from a Jamaican.

In addition, Seargent Christine Mullin, of the Maryland State Police, assigned to the Harford County Task Force also received information from a local drug user alleging Cresta Spinks is selling drugs.

Based on the information provided by CS#4 and knowledge that Cresta Spinks is

W1-0037

contacting Lyndon MILLER by phone, is compelling evidence that leads your affiants to believe that she is purchasing narcotics from MILLER.

Through a routine Maryland Vehicle Administration Check, your affiants discovered that Cresta Michelle Spinks, a white female, weighing 163 lbs, 5'5 tall, having a date of birth of October 25, 1983 listing an address of 1410 Willow Oak Road, Edgewood, Maryland 21040.

A Maryland criminal history check was conducted using the Maryland Criminal Justice Information System (CJIS) on Cresta Spinks, which revealed the following arrests:

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 09/07/2007 | Mal Dest. Prop/Value - $50 | Ocean City Maryland Police |
| | Deadly Weapon-Int./Injure | |
| | Dangerous Weapon | |
| 07/06/2004 | Theft: Less $500 | Harford County Sheriff's Office |
| | Theft: Plus $500 | |
| | Rogue and Vagabond | |
| | Mal Dest. Prop/Value $500 | |
| | Forgery-Priv. Documents | |
| | Uttering False Document | |
| | CDS: Poss. Paraphernalia | |
| | Theft-Scheme: $500 Plus | |
| 06/02/2004 | CDS: Not Marijuana | Harford County Sheriff's Office |
| | CDS: Poss. Marijuana | |
| | CDS Pack Mater Poss./Dist. | |
| 05/29/2004 | Theft: $500 Plus Value | Harford County Sheriff's Office |
| | Con: Theft: $500 Plus | |
| 05/17/2004 | Theft: $500 Plus value | Harford County Sheriff's Office |
| | Burglary/2nd degree | |
| | Con: Burglary 2nd degree | |
| | Burglary 4th degree | |
| | Theft: $500 Plus | |

28

W1-0038

| | | |
|---|---|---|
| | Mal Dest. Prop - $500 | |
| 05/03/2004 | Mal. Dest. Property $500 | Harford County Sheriff's Office |
| | Mal. Dest. Prop. - $500 | |
| | Rogue and Vagabond | |
| | Burg Tools-Mot./Veh/Poss | |
| 04/06/2004 | Theft over $500 | Bel Air Police Department |
| 06/29/2003 | CDS Violation | Baltimore City Police Department |
| | CDS: Poss. Marijuana | |

Furthermore your affiants know through the DNR Analysis that this cellular number is contacting or being contacted by the cellular telephone(s) being utilized by Lyndon MILLER.

**(301) 500-4098:**

Your affiants have received telephone subscriber for this phone number, registered to Nancy Akers. Your affiants are familiar with Nancy Akers, of 4200 Conowingo Road, from the previous mentioned drug buys from her residence, in which Lyndon MILLER is supplying her household with cocaine.

Through a routine Maryland Vehicle Administration Check, your affiants discovered that Nancy Lee Akers, a white female, weighing 110 lbs, 5'3 tall, having a date of birth of September 12, 1961 listing an address of 4200 Conowingo Road, Lot 8, Darlington, Maryland, 21034.

A Maryland criminal history check was conducted using the Maryland Criminal Justice Information System (CJIS) on Nancy Akers, which revealed the following arrests:

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 06/24/2003 | Theft: Less $500 | Annapolis Police Department |
| 10/08/1999 | Theft: Less $300 | Anne Arundel County Police Dept. |
| | BD Ck/Utter/NSF | |
| 11/02/1990 | Obstruction/Hindering | Anne Arundel County Police Dept. |
| 08/09/1987 | Fraud/Conversion | Annapolis Police Department |
| | Theft/Felony | |

Furthermore your affiants know through the DNR Analysis that this cellular number is contacting or being contacted by the cellular telephone(s) being utilized by

29

W1-0039

Lyndon MILLER.

(443) 695-9913

Your affiants have received telephone subscriber for this phone number, registered to Michael Foltz.

Through a routine Maryland Vehicle Administration Check, your affiants discovered that Michael Joseph Foltz, a white male, weighing 230 lbs, 6'1 tall, having a date of birth of April 16, 1965 listing an address of 3510 Miller Road, Street, Maryland 21154.

A Maryland criminal history check was conducted using the Maryland Criminal Justice Information System (CJIS) on Michael Foltz, which revealed the following arrests:

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 05/30/2009 | Assault 2nd Degree | Maryland Commissioner |
| 08/21/2008 | Violate Exparte/Prot Order | Harford County Sheriff's Office |
| 10/27/1991 | Burglary | Maryland State Police, Bel Air |
| | Battery | |
| | Kidnap/Adult: Interstate | |
| | Assault | |
| | False Imprisonment | |

Furthermore your affiants know through the DNR Analysis that this cellular number is contacting or being contacted by the cellular telephone(s) being utilized by Lyndon MILLER.

## DNR LINE INFORMATION FOR PHONE NUMBER 570-540-0509:

This line is a T-Mobile Wireless cellular telephone subscribed to a "Prepaid non customer" with no address listed, currently being utilized by Lyndon MILLER. The DNR attached to this telephone number was activated on April 12, 2013. A total of 62 activations occurred between April 12, 2013 and May 1, 2013 and is currently continuing.

Below is a list of the subscribers who had some of those activations and/or are

30

W1-0040

persons who your affiants believe are involved with Lyndon MILLER and his illegal drug distribution organization in this investigation, and other persons who your affiants believe are co-conspirators:

| PHONE # | ASSOCIATED TO: | TOTAL CALL ACTIVATIONS: |
|---|---|---|
| 1. (410) 934-9399 | Darryl Maurice Malloy | 6 |
| 2. (805) 637-7243 | Kevin Samuel Rosario | 1 |
| 3. (443) 619-8651 | Leland Lee Ames | 24 |

Your affiants will now address the persons and places associated with these telephone numbers as they relate to this investigation:

### (410) 934-9399

Your affiants have not received telephone subscriber for this phone number, however through investigation have discovered that Darryl Maurice Malloy is using this number. The Harford County Task Force is familiar with Darryl Malloy and has investigated him in the past for selling large amounts of cocaine.

Through a routine Maryland Vehicle Administration Check, your affiants discovered that Darryl Maurice Malloy, a black male, weighing 160 pounds, 5'10 tall, having a date of birth of June 13, 1982 listing an address of 3009 Goathill Road, Abingdon, Maryland, 21009.

A Maryland criminal history check was conducted using the Maryland Criminal Justice Information System (CJIS) on Darryl Malloy, which revealed the following arrests:

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 11/21/2012 | Assault 2nd degree | Harford County Sheriff's Office |
| 05/19/2011 | CDS: Poss.-Marijuana | Harford County Sheriff's Office |
| | CDS: Poss. W/Intent to Dist. | |
| | CDS: Poss. not marijuana | |
| | Negligent Driving | |
| | Reckless Driving | |
| | Attempt Driver to Elude | |

31

W1-0041

| 03/04/2005 | CDS: Poss. W/Int. to Dist. | Harford County Sheriff's Office |
|---|---|---|
|  | CDS: Poss. Not Marijuana |  |
| 10/17/2002 | CDS: Poss. Marijuana | Maryland State Police, JFK |
| 05/05/2002 | Poss. of Marijuana | Harford County Sheriff's Office |
| 02/02/2002 | Create CDS Counterfeit | Harford County Sheriff's Office |

Furthermore your affiants know through the DNR Analysis that this cellular number is contacting or being contacted by the cellular telephone(s) being utilized by Lyndon MILLER.

**(805) 637-7243**

Your affiants have not received telephone subscriber for this phone number, however through investigation and law enforcement databases, have discovered that Kevin Samuel Rosario is using this number in Maryland.

Through a routine Pennsylvania Department of Motor Vehicles, your affiants discovered that Kevin Samuel Rosario, an Hispanic male, weighing 140 pounds, 5'8 tall, having a date of birth of February 16, 1993 listing an address of 606 West Second Street, Hummelstown, Pennsylvania, 17036.

A Maryland and National criminal history check was conducted on Kevin Samuel Rosario, which revealed the following arrests:

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 03/12/2013 | CDS: Poss. W/Int. Dist. | Maryland State Police, Forestville |
|  | Handgun in Vehicle |  |
|  | Firearm Use/Fel.-Viol |  |
|  | Firearm/Drug Traf. Crime |  |
|  | CDS: Distr. Etc. W/Firearm |  |
|  | Poss. of Firearm Minor |  |
|  | Know Alter Firearm ID |  |
|  | Reg Firearm: Illegal Poss. |  |
|  | CDS: Poss-Marijuana |  |
|  | Obstructing & Hindering |  |

32

W1-0042

Furthermore your affiants know through the DNR Analysis that this cellular number is contacting or being contacted by the cellular telephone(s) being utilized by Lyndon MILLER.

**(443) 619-8651**

Your affiants have received telephone subscriber for this phone number, registered to Leland Lee Ames.

Through a routine Maryland Vehicle Administration Check, your affiants discovered that Leland Lee Ames, a black male, weighing 170 lbs, 6'1 tall, having a date of birth of August 28, 1960 listing an address of 1647 Poole Road, Darlington, Maryland 21034.

A Maryland criminal history check was conducted using the Maryland Criminal Justice Information System (CJIS) on Leland Ames, which revealed the following arrests:

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 09/09/2007 | Trespass: Private Property | Maryland State Police, Bel Air |
|  | Resist/Interfere w/Arrest |  |
|  | Fail Obey Renble/Lawfl |  |
|  | Disorderly Conduct |  |
| 02/28/2007 | U/U Livestock MV Etc | Harford County Sheriff's Office |
|  | Theft: $500 Plus Value |  |
| 08/21/2006 | Assault 2nd Degree | Harford County Sheriff's Office |
| 12/24/1992 | Battery | Harford County Sheriff's Office |
| 05/28/1990 | CDS-Para/Use Poss. W/Int. | Aberdeen Police Department |
| 04/21/1989 | CDS: Unlawful MFGR | Maryland State Police, North East |
|  | CDS: Distribute |  |
|  | CDS: Unlawful Possession |  |

Furthermore your affiants know through the DNR Analysis that this cellular number is contacting or being contacted by the cellular telephone(s) being utilized by Lyndon MILLER.

**DNR LINE INFORMATION FOR PHONE NUMBER 301-501-2915:**

33

W1-0043

This line is an AT & T Wireless cellular telephone currently subscribed to Airvoice, LLC of 28601 Southfield Road, Lathrup Village, MI, 48076, currently being utilized by Lyndon MILLER. The DNR attached to this telephone number was activated on April 12, 2012. A total of 28 activations occurred between April 12, 2013 and May 1, 2013 and is currently continuing.

To date, your affiants have not obtained information for valid telephone subscribers. As previously stated, your affiants believe this phone number may be used primarily for MILLER'S supplier of drugs.

**DNR LINE INFORMATION FOR PHONE NUMBER 302-354-5798:**

This line is a prepaid Verizon Wireless cellular telephone subscribed to OAS of 30 Independence BLVD, Warrren, NJ, currently being utilized by Lyndon MILLER. The DNR attached to this telephone number was activated on May 1, 2013.

To date, your affiants have not obtained information for any telephone subscribers. Your affiants have studied the early patterns within the calls and found that a large portion of the telephone numbers contacting Lyndon MILLER'S cellular telephones seem to only have contact for short durations. They are aware that this pattern is consistent with CDS activity.

**DNR LINE INFORMATION FOR PHONE NUMBER (620) 388-3344:**

This line is believed to be a prepaid Verizon Wireless cellular telephone, currently being utilized by Lyndon MILLER. The DNR attached to this telephone number was activated on May 1, 2013.

To date, your affiants have not obtained information for any telephone subscribers. Your affiants have studied the early patterns within the calls and found that a large portion of the telephone numbers contacting Lyndon MILLER'S cellular telephones seem to only have contact for short durations. They are aware that this pattern is consistent with CDS activity.

## GOALS OF THE INVESTIGATION:

During the course of this investigation, your affiants have used or attempted to use

34

W1-0044

numerous investigative techniques in order to identify members of this organization. Although the techniques used have provided some useful information, they have not provided the evidence necessary for the successful identification, dismantling and prosecution of all members of this organization, its suppliers and other co-conspirators, many of whom are still unknown to your affiants at this time. Because of this, it has become necessary for your affiants to petition the State's Attorney for Harford County, State of Maryland, to apply for an order to authorize the interception and recording of certain telephonic communications.

Your affiants know that once these persons are identified, a greater understanding of this organization will be developed. Your affiants and the State's Attorney's Office for Harford County, State of Maryland, hope to achieve the following:

1. To gain the evidence necessary to arrest and convict the principal targets of this investigation who may, or may not be positively identified, and those persons as yet unknown, who are engaged in the distribution of controlled dangerous substances.

2. To identify all sources of supply for this illegal drug conspiracy, and to obtain the evidence necessary to arrest and convict those subjects.

3. To gain the evidence necessary to arrest and convict all co-conspirators, including resellers and financiers, and to show their role in this organization.

4. To identify any addresses and telephone numbers of all participants, and to assist in identifying the locations of criminal activity with regards to this conspiracy, and the distribution of controlled dangerous substances.

5. To uncover the intricacies of this organization, including the hierarchy and method of operation, gang affiliation and hierarchy, and determine whether or not this is one in a series of similar criminal conspiracies relating to this illegal drug organization.

6. To identify any and all stash houses used by this organization, and to gain the probable cause needed to obtain search and seizure warrants for these locations to gain additional evidence that will assist in the conviction of members of this illegal drug organization.

7. To obtain the evidence necessary to seize any and all assets in this conspiracy that has been gained by the proceeds of this illicit drug scheme and to identify the flow of monies.

35

W1-0045

8. To prevent continued violations of the Controlled Dangerous Substances Laws by the participants in this illegal drug conspiracy in Harford County and the State of Maryland.

Your affiants believe that it is important to note that this investigation is directed at obtaining evidence and information sufficient for the convictions of those persons already identified as mentioned above, their suppliers of cocaine, heroin and marijuana, and all co-conspirators, both known and as yet to be identified, that are obtaining sufficient quantities of controlled dangerous substances directly from the organization for redistribution to lower echelon persons. The investigation has failed to achieve those goals thus far.

## EXHAUSTED INVESTIGATIVE TECHNIQUES:

Your affiants, based upon their training, knowledge, and experience, and in compliance with Title 18, United States Code, Section 2518 (1) and (3) and the Courts and Judicial Proceedings Article, Section 10-408 (a) (1) (iii) of the Maryland Criminal Laws Annotated, state that in addition to, and in summary of, the aforementioned investigation, the following investigative procedures have been tried but have failed, or were deemed to be too dangerous, or were unlikely to succeed if tried, to produce the information now sought to be obtained by means of electronic interception of telephonic communications of **LYNDON FACISCO MILLER OVER TELEPHONIC LINES (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 and any ADDITIONAL telephone numbers utilized by LYNDON FACISCO MILLER.**

1. **NARCOTICS RELIABLE INFORMANTS:** Commonly during the course of an investigation, persons come forward who are able to provide information about an organization. These persons are also able to intermingle with members of the organization, and at times make purchases of controlled dangerous substances under the direction of the presiding investigator(s). Your affiants have been able to develop and debrief multiple confidential informants and sources pertaining to Lyndon MILLER. Although the informants information and controlled buys proved useful, they have not provided the evidence necessary for the successful identification, dismantling and prosecution of all members of this organization, its suppliers and other co-conspirators,

36

many of whom are still unknown to your affiants at this time.

2. **UNDERCOVER POLICE BUYS:** During the course of an investigation, an introduction of an undercover police officer into the organization was discussed and may be possible. This would allow your affiants to obtain firsthand knowledge about the organization. Further, while in this role, the undercover police officer purchases controlled dangerous substances. This investigative technique is useful in obtaining evidence and a solid case against the person from whom the undercover purchases were obtained, but gives very little insight into the infrastructure of the organization. Only electronic interception of telephonic communications of the **LYNDON FACISCO MILLER OVER TELEPHONIC LINES (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 and any ADDITIONAL telephone numbers utilized by LYNDON FACISCO MILLER** can provide additional information i.e., co-conspirators, suppliers, facilitators, meeting places, financiers, location of evidence, et cetera.

3. **SURVEILLANCE:** Your affiants believe that surveillance would not provide any additional information as to the upper echelon of the organization or the activity which takes place out of the view of law enforcement. While some important information has been successfully gathered by using this method, it has failed to significantly advance the investigation. Further, surveillance has proven to be difficult.

A. **STATIONARY SURVEILLANCE:** As mentioned above, stationary surveillance would not provide identification of all co-conspirators, suppliers of cocaine, heroin or marijuana, their roles within the organization, or any evidence toward the success of this investigation. Further, even if surveillance were able to determine the true identity of a co-conspirator, that alone would not be enough evidence to successfully prosecute that individual. Further, if your affiants were to approach any neighbors for permission to utilize their residence or rooftops for surveillance, this would surely jeopardize the investigation since it is not known which neighbors may be involved with the suspect in this illegal drug distribution organization, and surely word may innocently get out that police are watching someone in the area.

In addition, Lyndon MILLER'S residence is located in the Owings Run apartment complex. This development is a private gated community, meaning to gain access to the

37

complex, you must enter through a security gate. As a drug dealer, this secured community is advantageous for MILLER and proves difficult to conduct surveillance.

Your affiants feel that any information or assistance gained by the property management may cause a risk to the case. In the past, investigators have found that property managers are sometimes associates of members of their communities.

**B. MOBILE SURVEILLANCE:** To date, the mobile surveillance in this investigation has provided little additional information which allows your affiants to further identify all participants involved in this conspiracy scheme, and has in some instances possibly compromised the secrecy of the presence of police personnel. Your affiants have been able to conduct mobile surveillance; however, the results have not determined the exact roles of the individuals observed, or exactly what activity is taking place.

Your affiants know that conducting a large amount of mobile surveillance on the same subjects day after day significantly increases the possibility of the targets discovering that they are under investigation. Additionally, even if targets are able to be observed meeting with suspected co-conspirators, the nature of the meeting will not be entirely understood.

In addition, MILLER'S habits, which are very slow, make it difficult to conduct surveillance. Further, MILLER is continually renting new cars each week. Without the assistance of an electronic interception of telephonic communications, further surveillance may prove to be difficult.

**4. FINANCIAL INVESTIGATION:** Your affiants have conducted a financial investigation on LYNDON FACISCO MILLER. This investigation has revealed that he has no reported Maryland wage history. He appears to be living and spending money beyond his means based on this lack of reported income. This aspect of the investigation, however, has not and rarely does allow investigators to see into the intricacies of a distribution organization.

**5. DIALED NUMBER RECORDERS:** A Dialed Number Recorder /Pen Register (DNR) has been placed on the telephone lines **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344** associated to and utilized by LYNDON FACISCO MILLER. Your affiants have also ascertained certain cellular use patterns from this information. This information, however, does not provide your affiants with

W1-0048

each subject's role in the organization or provide any further insight into the logistics of the operation.

6. **TELEPHONE SUBSCRIBER INFORMATION:**   During the course of the investigation, your affiants have received little subscriber information.   Your affiants know through experience that although subscriber information proves helpful its use is limited as many drug dealers utilize cellular phones in other people's names to avoid detection by the police.   Your affiants aver that the subscriber information alone does not identify the parties to the conversation, but only the subscriber. Only the currently sought intercepting and recording of the telephonic communications would allow your affiants to further identify the participants of the conversations who are involved in this organization and gain the necessary evidence for their successful arrest and prosecution.

7. **SEARCH AND SEIZURE WARRANTS:** Thus far in the investigation, your affiants have been able to gain enough evidence to execute a search and seizure warrant at the residence of LYNDON FACISCO MILLER.   The execution of a search warrant, however, would not succeed in showing the total involvement of all the participants in this illegal drug organization.  It would, however, most likely cause the organization to change their methods of operation in an effort to hide from law enforcement.

8. **GRAND JURY TESTIMONY:** During the course of this investigation, your affiants have accumulated several names of persons who are associated with the main participants of this investigation. Your affiants are familiar with Section 9-123 of the Courts and Judicial Proceedings Article, of the Maryland Criminal Laws Annotated, which allows for the granting of immunity and compelling of testimony against co-conspirators. However, your affiants realize that it is not practical to undertake a Grand Jury investigation involving such a large number of witnesses.  Your affiants believe that it is very likely that the knowledge of a Grand Jury investigation into the organization would be revealed through persons compelled to testify or other persons having knowledge of the investigation. This same information may ultimately reach the organization, sources of supply, or other co-conspirators, causing them to curtail their activities completely, and thereby escape detection and prosecution.  For these reasons, your affiants believe that this type of investigative technique is too risky to achieve the goals of this investigation. Additionally, by granting immunity to these co-conspirators in exchange

39

for their testimony, your affiants acknowledge that serious felons may be allowed to go unpunished for their crimes.

9. **ASSISTANCE FROM OTHER AGENCIES:**  Your affiants have made inquiries with other law enforcement agencies, including local, state and federal departments located in the State of Maryland to ascertain if any of those agencies had any evidence that would enable your affiants to make immediate apprehensions of all of the suppliers and lower level associates involved with this drug distribution and conspiracy operation, to no avail.

10. **ABANDONED TRASH:** Your affiants know that evidence can be obtained by searching the abandoned trash of suspected drug dealers. Your affiants have considered attempting to retrieve the abandoned trash from LYNDON FACISCO MILLER'S residence but have determined that the seclusion of the court would provide a greater risk of detection thus compromising the larger investigation.  Your affiants believe that the likelihood of being observed is not worth the risk. Your affiants are familiar with recent investigations where the suspects observed investigators taking the abandoned trash, which significantly hindered any further investigation.

11.  **CO-CONSPIRATOR COOPERATION:** Your affiants do have confidential informants into Lyndon MILLER, but none that can provide the information necessary to fully dismantle the organization.

12. **REVERSE BUYS:** A reverse buy is where covert law enforcement personnel negotiate the sale of a large amount of controlled dangerous substances to a known drug distributor. The Dealer is arrested when the actual deal takes place and he or she is in possession of the drugs. Your affiants have not found that this investigative technique is possible with LYNDON FACISCO MILLER.  Even if it was, it is unlikely that this investigative technique would reveal the intricacies of the entire organization.

13. **MAIL COVERS:**  Your affiants know that a mail cover is a useful tool in identifying persons receiving mail at the suspect address and those persons and businesses sending mail to the addresses. To your affiants knowledge, LYNDON FACISCO MILLER has no fixed address listed to receive any mail and uses alias to protect his true identity.  Further, the use of a mail cover was ruled out because the existence of a mail cover was revealed to a suspect in another major investigation by the mail carrier.  Additionally, a mail cover

40

W1-0050

will not be able to provide your affiants with the evidence and information needed to arrest and successfully prosecute LYNDON FACISCO MILLER or any of their co-conspirators.

14. **RECORDS CHECKS**: So far in this investigation, numerous records checks including, criminal records, various law enforcement records databases, Motor Vehicle Administration, and Telephone Subscriber have been conducted on co-conspirators. The information obtained is not enough to show each individual's role in the organization or allow for the successful arrest and prosecution of those individuals.

FURTHER: Your affiants Penman, Gregory and Miranda would state and aver that they are aware of no other investigative technique which would reasonably enable them to strive toward the objectives/goals of this investigation, other than the issuance of an Order to Intercept and record certain telephonic communications over the telephones currently bearing the numbers **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 that are currently being utilized by LYNDON FACISCO MILLER and any additional telephone numbers utilized by LYNDON FACISCO MILLER.**

Your affiants have detailed the investigative methods and techniques herein which have been attempted. These methods and techniques have been of great value toward reaching the goals. However, even when combined, your affiants know that the ultimate goal of arrest and successful prosecution of all individuals involved, and the seizure of other evidence which would illustrate the level of participation of other co-conspirators cannot be reached without this interception and recording of the specified telephonic communications.

Your affiants would further state that they have illustrated the manner in which the participants in this criminal conspiracy are communicating by the use of telephones. Your affiants know of no other investigative techniques which would enable them to further this investigation toward the desired objectives and goals which they hope to attain.

Based on the facts detailed herein, your affiants aver that the crime of distribution of controlled dangerous substances, as well as conspiracy to distribute controlled dangerous substances in violation of Maryland common law and as defined in Sections

41

CR 5-601 through CR 5-628 of the Maryland Criminal Laws Annotated, have been, and are currently being committed by utilizing the telephone currently bearing the numbers **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 that are currently being utilized by LYNDON FACISCO MILLER and any additional telephone numbers utilized by LYNDON FACISCO MILLER** and by various members of the organization to further the controlled dangerous substance criminal conspiracy.

Your affiants know, from past experience and knowledge, that other traditional methods of investigation have proven to be ineffective to apprehend persons involved in the above mentioned controlled dangerous substance operation since the telephone itself, in fact, becomes an instrumentality of the crime.

Your affiants will now conclude, based upon the above described investigation conducted; surveillances conducted, various records checks, information obtained from the Pen Registers (DNRs), information from other police officers, and your affiants training, knowledge and experience, that your affiants have probable cause to believe that the person(s) addressed below, are subject to be intercepted over the aforesaid telephone line for illegal drug purposes:

1. Lyndon Facisco MILLER, black Jamaican male, 5'7"tall, weighing 195 lbs, DOB: May 11, 1965, of 4509 Lyons Run Circle, Apartment 303, Owings Mills, Maryland 21117.

2. Janie Pearl Brown, white female, weighing 293 lbs, 5'7 tall, DOB: 03/25/1959 of 1575 Main Street Cardiff, Maryland 21160.

3. Cresta Michelle Spinks, a white female, weighing 163 lbs, 5'5 tall, DOB: October 25, 1983 listing an address of 1410 Willow Oak Road, Edgewood, Maryland 21040.

4. Nancy Lee Akers, a white female, weighing 110 lbs, 5'3 tall, DOB: September 12, 1961 listing an address of 4200 Conowingo Road, Lot 8, Darlington, Maryland, 21034.

5. Darryl Maurice Malloy, a black male, 160 pounds, 5'10 tall, DOB: June 13, 1982 listing an address of 3009 Goathill Road, Abingdon, Maryland, 21009.

6. Kevin Samuel Rosario, an Hispanic male, 140 pounds, 5'8 tall, DOB: February 16, 1993 listing an address of 606 West Second Street, Hummelstown, Pennsylvania,

42

W1-0052

17036.

7. Michael Joseph Foltz, a white male, 230 pounds, 6'1 tall, DOB: April 16, 1965 listing an address of 3510 Miller Road, Street, Maryland 21154.

8. Leland Lee Ames, a black male, 170 pounds, 6'1 tall, DOB: August 28, 1960 listing an address of 1647 Poole Road, Darlington, Maryland 21034.

And those persons unknown and yet to be identified who are engaged with the above named individuals in the distribution of Controlled Dangerous Substances in the State of Maryland.

As your affiants have previously mentioned, based upon their training, knowledge and experience, they know that there is no specific time of day or night in which persons involved in the conspiracy and distribution of controlled dangerous substances meet or communicate with each other. Your affiants know based on surveillance and the information collected from the Dialed Number Recorders (Pen Registers) that there is line activity is during all hours of the day and night, twenty four hours a day, seven days a week, over the telephone lines **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 that are currently being utilized by LYNDON FACISCO MILLER and any additional telephone numbers utilized by LYNDON FACISCO MILLER**. Through information obtained as the result of this investigation and your affiants' training, knowledge and experience, it is known that controlled dangerous substance activity takes place at all hours of the day and night, and in many instances, planned deliveries and meetings among co-conspirators are often late, delayed, or require unusual hours of immediate attention.

Therefore, your affiants request that the interception and recording over the aforesaid telephones numbers **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 that are currently being utilized by LYNDON FACISCO MILLER and any additional telephone numbers utilized by LYNDON FACISCO MILLER,** allow for a full twenty four hour a day interception and recording, seven days a week, Sunday through and including Saturday for an initial period of 30 days. Your affiants would further request that interception and recording be granted not only for the above telephone lines, but for any subsequent telephone numbers on those same lines and subscribed by the same subscriber.

43

Your affiants affirm that there are exigent circumstances in this case of such nature that if either prior or simultaneous notice of the authorization for electronic interception and recording were given to the above described individuals, the purpose and objectives of the investigation would thereby be frustrated. Additionally, your affiants know that illegal drug activity is of an ongoing nature and does not cease at the conclusion of a particular CDS transaction, as illustrated throughout this affidavit.

Therefore, your affiants respectfully request that Applications be made for Ex Parte Orders authorizing electronic interception and recording of those conversations, including text messaging and communications, made to or from the telephone currently bearing the number **(570) 540-0509, (443) 545-4592, (301) 501-2915, , (302) 354-5798, (620) 388-3344 that are currently being utilized by LYNDON FACISCO MILLER and any additional telephone numbers utilized by LYNDON FACISCO MILLER** and by various members of the organization to further the controlled dangerous substance criminal conspiracy to distribute cocaine, heroin and marijuana in violations of the Maryland Criminal Laws Annotated and Maryland common law.

Your affiants aver that the nature of the communications facility bearing telephone numbers **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344** sought to be intercepted is cellular telephonic wire communications and short messaging services (SMS), Multimedia Messaging Service (MMS), Oral Communications, Electronic Communications. The cellular telephone service over which said communications are expected to occur currently bears the cellular telephone number **(570) 540-0509, (443) 545-4592, (301) 501-2915 , (302) 354-5798, (620) 388-3344 that is currently being utilized by LYNDON FACISCO MILLER,** and services provided by T-Mobile USA, AT & T and Verizon Wireless. The cellular telephone **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344** is believed to be utilized in Harford and Baltimore County, Maryland, as well as Pennsylvania and New York and being utilized to facilitate crimes that are eventually taking place in Harford County, Baltimore County, Maryland, Pennsylvania and New York, therefore and for this and other reasons as set forth in the attached affidavit, the events being investigated are occurring within the jurisdiction of Harford County, Maryland;

Your affiants respectfully request that the type of communications sought to be

44

intercepted are particularly described as follows: telephonic communications / oral conversations, direct connect and short messaging service (SMS), Multimedia Messaging Service (MMS), Electronic Communications of the above described subjects and those others as yet unknown, involved with them in the distribution of Controlled Dangerous Substances, in violation of the Maryland Criminal Law Article CR 5-601 through CR 5-628, and conspiracy to violate the Controlled Dangerous Substance Laws of the State of Maryland, under Maryland Common Law, to and from the **cellular telephone lines (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 that is currently being utilized by LYNDON FACISCO MILLER,** and any subsequent telephone numbers or lines assigned; and;

Your affiants respectfully request that that the facility from which the described communications are to be intercepted **cellular telephone lines (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 that is currently being utilized by LYNDON FACISCO MILLER and any additional telephone numbers utilized by LYNDON FACISCO MILLER** and any subsequent telephone number, ESN/IMSI or line assigned, which is received on service maintained by T-Mobile USA, Inc; AT & T and Verizon Wireless and

Your affiants respectfully request that the law enforcement agencies authorized to intercept said communications shall be and the same are hereby identified as follows: investigative or duly constituted law enforcement officers of the Harford County Sheriff's Office, Aberdeen Police Department, Bel Air Police Department, Havre de Grace Police Department, Maryland State Police, The Federal Bureau of Investigations (FBI), United State's Drug Enforcement Administration, Baltimore County Police Department, Baltimore Police Department, any other allied law enforcement agency, and duly sworn Assistant State's Attorneys for Harford County and the United States Attorney's Office, using the methods of electronic interception and recording described below, during the hours described below; and

Your affiants respectfully request that the above named law enforcement agencies shall intercept and record only those communications described herein, twenty four hours per day, 12 midnight through 12 midnight, Monday through and including, Sunday, seven (7) days a week inclusive, during an initial time period of 30 days and;

45

W1-0055

Your affiants aver that a showing of probable cause having been made in the Application, and in the Affidavit in support thereof, and incorporated therein by reference, that this said interception shall not automatically terminate, the same hereby is not to be terminated when communication of the type particularly described herein are first obtained; and

Your affiants respectfully request that  T-Mobile USA, AT & T and Verizon Wireless furnish the Applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception unobtrusively and with minimum interference with the service that T-Mobile USA, AT & T and Verizon Wireless are affording the person or persons whose communications are to be intercepted; and

Your affiants respectfully request that Cellco Partnership DBA Verizon Wireless, Nextel Communications Inc., Sprint/Nextel, Sprint Spectrum LP, Sprint, AT&T Wireless Services, L.P.,  Nextel Communications Inc., T-Mobile USA, Inc., Virgin Mobile, QWEST, Verizon, Comcast AND/OR ANY AFFECTED TELECOMMUNICATION SERVICES PROVIDER furnish the applicants and the aforementioned Law Enforcement Agencies, with subscriber information for the aforementioned telephone number to include billing, credit, user and electronic serial number (ESN) information, toll records or air time (call detail records) for an initial thirty (30) day period (one billing cycle), any and all special features for all published/non- published and associated telephone numbers, and/or IMSI, and/or SMS, and/or cellular site identification, unlimited geographically from call detail records for specific articulable facts pursuant to Courts and Judicial Proceedings Article 10-4A-04 that is consistent with Federal Statute U.S.C. 2703 for any non-published and published telephone numbers dialed from the aforementioned telephone or received through the Caller Identification Service/Caller Identification Deluxe, provided that the request for such information is made within ten (10) days of the expiration of this order.

Your affiants respectfully request that T-Mobile USA, AT & T and Verizon Wireless provide cellular site identification information, precision locate, unlimited geographically from call detail records for specific and articulable facts according to Federal Statute 2703D for the telephone lines cellular telephone lines (570) 540-0509,

W1-0056

(443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 that is currently being utilized by **LYNDON FACISCO MILLER** and any additional telephone numbers utilized by **LYNDON FACISCO MILLER.**

Your affiants would further present that they have no evidence or information that the above named individuals or targeted telephones were the subjects of any previous court authorized interception.

Further, your affiants have no evidence or information that any of the above named individuals or targeted telephones were ever the subjects of any prior wiretap application that was rejected by any judge.

Your affiants, Detective Aaron Penman, Detective Thomas Gregory and Detective Neil Miranda, who shall supervise the prayed for electronic surveillance and those law enforcement officers of the Harford County Sheriff's Office, The Maryland State Police, The Havre de Grace Police Department, The Aberdeen Police Department, The Federal Bureau of Investigations, The United States Drug Enforcement Administration, Bel Air Police Department, the Baltimore County Police Department, the Baltimore Police Department, designated Assistant States Attorneys for Harford County and the United States Attorney's Office and allied Agencies assigned by said affiants to participate in this investigation, shall at all times conduct the interception process in such a way as to minimize the interception of the communications which are not otherwise subject to the electronic surveillance pursuant to the attached minimization guidelines.

Your affiants would further request that said Application and Ex Parte Order authorize the interception and recording of conversations and background noises, seven days a week, twenty four hours a day, for an initial 30 days, over said telephone lines currently bearing the telephone numbers **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 that is currently being utilized by LYNDON FACISCO MILLER** and any additional telephone numbers utilized by **LYNDON FACISCO MILLER**, of this illegal drug organization to further the controlled dangerous substance criminal conspiracy, for the reasons set forth in the Affidavit, in order to provide for the successful prosecution and further investigation into the above described violations of the Controlled Dangerous Substance Laws of the State of Maryland.

W1-0057

Further, that said Applications include the authorization to install devices known as Pen Registers/trap and trace devices/ Caller ID/Caller ID Deluxe (Calling Number Delivery), (DNR) to identify telephone numbers being called to and from the aforesaid telephone number.

Your affiants would further state that this illegal controlled dangerous substance distribution network is operating and / or originating in Harford County, State of Maryland.

Detective Aaron Penman #579
Harford County Sheriff's Office

Detective Thomas Gregory #656
Harford County Sheriff's Office

Detective Neil Miranda
Maryland State Police

BEFORE ME, a Circuit Court Judge in and for Harford County, State of Maryland, on this 6th day of May, 2013, personally appeared, Detective Aaron Penman, Detective Thomas Gregory and Detective Neil Miranda known to me or properly identified, and made oaths in due form that the contents of the foregoing document are true to the best of their knowledge and belief.

Judge for the Circuit Court for
Harford County, State of Maryland          TIME: 3:05 pm

48

W1-0058