ELH-13-0342
Exhibit 8



## APPLICATION AND AFFIDAVIT FOR SEARCH AND SEIZURE WARRANT

TO: The Honorable ___Mimi Cooper___ Judge of the District Court for Harford County, State of Maryland.

APPLICATION is herewith made for Search and Seizure Warrant in that there is probable cause to believe the laws relating to the illegal Manufacturing, Distribution, Possession with intent to Distribute and Possession of controlled dangerous substances as defined in Criminal Law Article Sections 5-101, 5-601, 5-602, 5-603, 5-605 and 5-619, dealing generally with controlled dangerous substances, including narcotics, hallucinogenic and dangerous drugs, are being violated in and upon a certain premises known as:

**1) 4509 Lyons Run Circle, apartment 303, Owings Mills, Baltimore County, Maryland and are being violated by Lyndon Facisco Miller, B/M DOB: 05-11-65 and Sophia Lorraine Warmington, B/F DOB; 10-20-67.**

Said premises are described as a three story apartment building consisting of light brown siding and stone façade with white trim. The front door to the apartment building is a white steel security door. The number 4509 is above the door and is gold. Apartment 303 is located on the third floor. Furthermore, said premises are known to, and can be identified by your affiants.

And a vehicle described as:

A white 2004 Ford van bearing Maryland registration 8AJ1740, VIN 2FTZA546X4BB05990, registered to Charmaine Sharon Reid Coldiron, a black female, date of birth of 10-14-64 at 7822 Woodside Terrace APT T-4, Glen Burnie, Maryland 21061.

And a vehicle described as:

A white 2004 Dodge passenger car bearing Maryland registration 6FHA53, VIN 1B3EL36X24N117446, registered to Sophia Lorraine Warmington, a black female, date of birth of 10-20-1967 at 4509 Lyons Run Circle, apartment 303, Owings Mills, Maryland 21117.

And a vehicle described as:

1

SW-0001

A 2007 Toyota four door passenger vehicle, bearing Maryland registration 8BY X10, VIN 4T1BE46KX7U030616, registered to Sophia Lorraine Warmington, a black female, date of birth of 10-20-1967 at 4509 Lyons Run Circle, apartment 303, Owings Mills, Maryland 21117.

2) **1546 Arena Road, Street, Harford County, Maryland 21154 and are being violated by Nancy Lee Akers, W/F DOB:** ▇▇ **and Burton Duane Anderson, W/M, DOB:** ▇▇▇.

Said premises are described as a two-story single family home style dwelling. The residence is covered with white siding and the roof is covered in grey shingles. There is a covered porch that extends across the front of the residence. The front door is white with an attached storm door. There is one window to the left of the front door and two windows to the right that are trimmed in green. There are three additional windows on the second story that are also trimmed in green. The numbers "1546" are displayed in black to the right of the door. The driveway is directly in front of the residence. Furthermore, said premises are known to, and can be identified by your affiants.

And a vehicle described as:

A white 1998 Toyota SUV 4 Runner bearing Maryland registration M146009, VINJT3HN86R2W0187991, operated and owned by Nancy Lee Akers, a white female, date of birth of ▇▇▇ of 4200 Conowingo Road lot 8, Darlington, Maryland 21034.

3) **4200 Conowingo Road Lot 8, Darlington, Harford County, Maryland 21034 and is being violated by Deanna Ilene Akers, W/F DOB:** ▇▇▇

Said premises are described as a single wide, white mobile home with a wide brown border identified as lot # 8. The front of the residence has an awning attached creating a front porch area. Furthermore, said premises are known to, and can be identified by your affiants.

4) **806 Wheeler School Road, Pylesville, Harford County, Maryland 21160 and is being violated by Janie Pearl Brown, W/F, DOB:** ▇▇▇.

Said premises are described as a single family style residence. The said premise is the first house on the left on Wheeler School Road. The residence is white, directly across from Atlantic Tractor on Route 165. The numbers "806" are on the mail box across from the house. There is a small detached garage on the right of the house. Furthermore, said premises are known to, and can be identified by your affiants.

5) **1410 Willow Oak Road, Edgewood, Harford County, Maryland 21040 and is being**

SW-0002

violated by Cresta Michelle Spinks, W/F DOB: ▮▮▮▮▮

Said premises are described as a single family rancher style house with light yellow siding, black shutters, and a stone foundation. The front door is white and has steps and a walkway leading to the entrance. Just to the right of the front door there is a large bay window. There is a driveway leading from the road to a carport on the right side of the house. The numbers "1410" are posted vertically on the mailbox post directly in front of the residence. Furthermore, said premises are known to, and can be identified by your affiants.

6) **2648 Gatehouse Drive, Baltimore, Maryland 21207 and are being violated by Tamesha Danielle Copes, B/F DOB:** ▮▮▮▮▮.

Said premises are described as a brick front townhouse with blue shutters. The front door is blue with the number "2648" displayed prominently above the front door knocker. Furthermore, said premises are known to, and can be identified by your affiants.

**And a vehicle described as:**

A 2006 Ford truck bearing Maryland registration T741811, VIN 1FMEU73846UA54015, registered to Tamesha Danielle Copes, a black female, date of birth of ▮▮▮▮▮ at 2648 Gatehouse Drive, Baltimore, Maryland, 21207.

7) **8890 Papillion Drive, Ellicott City, Howard County, Maryland 21043 and is being violated by Donna Yvette Jones, B/F DOB:** ▮▮▮▮▮.

Said premises are described as a two story townhouse with red brick front and beige trim, red shutters and a red front door. The numbers "8890" are displayed vertically to the right of the front door. Furthermore, said premises are known to, and can be identified by your affiants.

**And a vehicle described as:**

A 2006 blue Lexus bearing Maryland registration 9AE6586, VIN JTHCH96S860010737, registered to Donna Yvette Jones, a black female, date of birth of ▮▮▮▮▮ at 8890 Papillion Drive, Ellicott City, Howard County Maryland 21043. Furthermore, said vehicle is known to, and can be identified by your affiants.

8) **522 1ˢᵗ Street, Aberdeen, Harford County, Maryland 21001 and is being violated by Greg Allen Pringle, a black male, 5'9, 195 pounds, DOB:** ▮▮▮▮▮

3

ELH-13-0342

Said premises are described as a single family residence, with yellow siding. The residence is accessed by a white wooden porch that faces 1st street. The door is equipped with a clear storm door. The numbers "522' are to the right of the door on a gold placard and black numbers. Furthermore, said premises are known to, and can be identified by your affiants.

The names of your affiants are Detective Aaron Penman, Detective Thomas Gregory and Senior Trooper Neil Miranda, assigned to the Harford County Task Force.

In support of this Application and Affidavit and the basis for probable cause, your affiants depose and say:

Since November of 2011, the Harford County Task Force has received information regarding a subject by the name of "Charlie" selling significant quantities of cocaine, marijuana and heroin, which are Schedule I and II controlled dangerous substances (CDS), in Harford and surrounding counties of Maryland. During the course of this investigation, several co-conspirators have been identified and evidence has been obtained pursuant to surveillances, various records checks, informant information, and information from Pen Registers/Dialed Number Recorders (DNR), as well as controlled buys of CDS by a confidential informant. During the investigation, "Charlie" was identified as Lyndon Facisco Miller, and can be described as a black, Jamaican male, 5'7"tall, weighing 195 pounds, with a date of birth of May 11, 1965, who is residing at 4509 Lyons Run Circle, Apartment 303, Owings Mills, Maryland 21117.

Based on the investigation, case investigators requested the State's Attorney for Harford County to petition the court for a court order allowing the interception of electronic telephonic communications. On May 7, 2013, case investigators obtained a court order signed by the Honorable Angela Eaves, Judge of the Circuit Court of Maryland for Harford County, to intercept conversations over telephone lines (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344, belonging to Lyndon Facisco Miller. After the telephonic investigation began, case investigators determined Lyndon Miller was also using telephone lines (302) 388-8195, (443) 252-1294, (724) 255-8960 and (251) 421-4575 and sought court orders to intercept conversations over those telephone lines.

Pursuant to the above mentioned wire taps of the listed cellular telephones being

4

SW-0004

utilized by Lyndon Miller, numerous telephone conversations were intercepted and recorded as they occurred, which enabled case investigators to identify other co-conspirators in this illegal drug conspiracy. Throughout the telephonic investigation, case investigators were able to confirm that Lyndon Miller is obtaining large quantities of cocaine and heroin and re-distributing amounts to others. It was learned over careful review of the coded conversations, which have been reviewed by your affiants, that persons thus far identified were exchanging CDS and currency with Lyndon Miller as part of this criminal conspiracy. Although Miller resides in Baltimore County, he is known to associate and supply Harford County, Baltimore County, Howard County, Baltimore City and Pennsylvania drug dealers.

Case investigators would state that this illegal drug conspiracy, of an on-going nature, where illegal drugs, specifically cocaine, a Schedule II controlled dangerous substance and heroin, a Schedule I controlled dangerous substance, were constantly being distributed and sums of money were being exchanged.

Specifically, your affiants were able to identify the following subjects and addresses as co-conspirators gaining large amounts of cocaine from Lyndon Miller. Listed below are summarized phone conversations, surveillance observations and interpretations from your affiants regarding Lyndon Miller's drug organization as it pertains to each address.

1) <u>4509 Lyons Run Circle, apartment 303, Owings Mills, Baltimore County, Maryland 21117, 2004 Ford Van with Maryland registration 8AJ1740, 2004 Dodge passenger car with Maryland registration 6FHA53 and 2007 Toyota four door passenger vehicle, bearing Maryland registration 8B3X10.</u>

During the months of May and June, 2013 and throughout this investigation, Miller and Warmington have been observed by surveillance on several occasions leaving this address and meeting with the below listed co-conspirators for drug transactions.

On Wednesday, May 8th, 2013 at 1538 hours, an incoming telephonic call was intercepted between Lyndon Miller and an unknown female later identified as Nancy Akers. During the call, Nancy Akers told Lyndon Miller that she is okay and needed to see him in a couple of hours at about 5 or 6 pm. Lyndon Miller said to meet at 5:30 pm. Nancy Akers then asked Lyndon Miller to just let her know which spot he would like to meet. Your affiants

SW-0005

knew that this was a meeting for a drug transaction and that the two utilized prearranged meeting locations which are known to Lyndon Miller and Nancy Akers by code numbers.

Based on the call and knowledge that Miller would be travelling to Harford County to meet Akers for a prearranged deal, surveillance was set up on Miller. Shortly after the call was made, Lyndon Miller was observed leaving his residence at 4509 Lyons Run Circle in Owings Mills and travelling towards Harford County. Lyndon Miller was operating a rental vehicle, a charcoal / gray Chevy Cruze, bearing Maryland registration 9AV4573. Your affiants know through their training, knowledge and experience that drug dealers commonly use rental cars to distribute drugs. Using rental cars provides several advantages for drug dealers. A rental car cannot be seized if or when a dealer is caught selling drugs. Further, a rental vehicle is normally an ordinary car with no distinguishing features that would catch the attention of law enforcement. Plus, rental cars can also be turned in and exchanged for other vehicles periodically or if the dealer feels they gained too much attention or are being investigated.

At approximately 1834 hours, surveillance members were in the area of Love Road where Lyndon Miller was observed driving to meet Nancy Akers to conduct a drug transaction. At that time, it was believed that the transaction was completed and surveillance observed a white Toyota 4Runner, bearing Maryland registration M146009, beginning to drive from the side of the road where Miller had been observed parked. Surveillance members traveled towards the white 4 Runner at approximately 5 mph, and could clearly observe the driver of the 4Runner through the windshield and driver's side window. Surveillance members would positively identify the driver as Nancy Lee Akers through the known MVA photograph of her contained in an investigation surveillance packet that was provided at the beginning of this investigation.

A check of the registration for the Toyota 4Runner, bearing Maryland M146009, listed a 1998 Toyota Truck, registered to a Nancy Lee Akers, a white female with a date of birth of ████ and a listed address of 4200 Conowingo Road, Darlington, Maryland 21034.

SW-0006

ELH-13-0342

On Saturday May 11th, 2013 surveillance members were advised that Lyndon Miller would be meeting a subject, later identified as Patrick Fox, for a drug related meet. Surveillance was aware that Miller was traveling to Harford County from his residence in Owings Mills, Maryland.  Surveillance was advised that Miller and Fox arranged to meet at the "bar." Your affiants know this is coded conversation for their meeting place; surveillance believed the meet would be taking place on a desolate back road in Harford County, as this has been Miller's method of operation during this investigation.

At approximately 1748hrs, surveillance members observed a white GMC SUV traveling towards Craigs Corner Road and Rock Run Road for about ten seconds. During the time the white GMC was at the intersection, Lyndon Miller had made another U-turn and the white GMC began following Miller.  Miller and the white GMC then turned onto Cooley Mill Road where they met for a short period of time.  Approximately one minute later, surveillance members observed the GMC and Miller departing the area.  Based on this knowledge, investigation and observations of a short stay, your affiants believe that Lyndon Miller distributed drugs to the occupant of this vehicle.  Surveillance members observed the white GMC to display a Maryland registration of M538331. A check of the vehicle registration plate through the Maryland MVA revealed the vehicle is a 2004 GMC truck currently registered to Patrick Lee Fox, a white male with a date of birth of [ ] and having a listed address of 129 Starboard Court, Perryville, Cecil County, Maryland 21903.  Patrick Lee Fox would later be identified as the operator of the same GMC displaying M538331 that met with Miller.

At the conclusion of the drug meet it was determined that a probable cause stop would be conducted on the white GMC.  The traffic stop was conducted on Route 40 near Ohio Street in Havre de Grace, Maryland.  During the traffic stop, Havre De Grace Police Officer Daniels identified the driver of the white GMC as Patrick Lee Fox, a white male with a date of birth of [ ] A search incident to arrest of Fox's GMC truck was conducted by Officer Daniels who located a plastic bag tied in a knot that contained a quantity of cocaine.  This bag of cocaine was found stuffed between the passenger seat and the center console of the vehicle. Officer Daniels also located a smaller plastic baggie that contained a small quantity of cocaine.  This baggie of cocaine was found under the cup holder and inside of a black pen cap.  Fox was

7

SW-0007

ELH-13-0342

arrested and transported to the Havre De Grace Police Department. The total amount of cocaine recovered from Fox's vehicle weighed approximately 8.2 grams gross inside the plastic baggie and 0.3 grams gross from inside the pen cap. A total of $207.00 in United States currency was also recovered form Patrick Fox.

On May 14th 2013, a series of communications were intercepted between Lyndon Miller and Nancy Akers which were determined by investigators to be drug related in nature. These communications indicated that Miller and Akers were going to meet in the area of East Nobles Mill Road in Harford County for the purpose of Miller supplying Akers with cocaine.

During this same time frame, Miller was intercepted numerous times communicating with Sophia Warmington. These communications were interpreted to indicate that Warmington was going to travel from their residence in Owings Mills to Harford County to meet with Miller and retrieve money from him. Electronic surveillance determined that Warmington left the area of Lyons Run Circle in Owings Mills in a white in color Ford van with Maryland registration 8AJ1740. She drove to the area of Riverside, as indicated by Miller. During this time, surveillance members, to include Detective Underhill, followed Miller from the area of Nobles Mill Road operating the Impala. He also drove to the Riverside area. Miller and Warmington spoke multiple times regarding meeting locations until they finally arrived together in the Holly Woods neighborhood in Aberdeen.

Detective Underhill observed Warmington and Miller both stop their vehicles in the area of Holly Woods Circle for approximately five minutes. They parked on a side street with minimal exposure to any surveillance units. Because of the difficult surveillance conditions (surveillance conscious targets, minimal pedestrian / vehicle traffic) detectives were unable to observe any exchange.

After their brief meeting, Miller and Warmington left the area at the same time towards Route 7. Warmington turned south and Miller turned north. Surveillance followed Warmington and observed her turn off of Route 7 approximately ½ mile away into an apartment neighborhood on Pannell Drive. She then made an immediate right onto Lexi Drive.

Warmington did not exit her vehicle, and appeared to only turn around and drive

SW-0008

ELH-13-0342

directly back out of the neighborhood without any contact with anyone there. Detective Underhill knows that this activity is consistent with subjects involved in CDS activity, as they will make sudden and unpredictable stops in an effort to see if anyone is following them.

Detective Underhill and other units followed Warmington to Lyons Run Circle. She made no stops on the way there. She exited her van carrying what appeared to be a white plastic bag and her black pocketbook. She appeared to shuffle her items around, and then Detective Underhill did not see the white plastic bag anymore. Warmington walked across the parking lot and visually scanned the cars on the lot. She appeared to pay specific attention to Detective Underhill's covert vehicle which was parked nearby, as it was not known to frequent the neighborhood. Sophia Warmington was then observed entering building 4509 on Lyons Run Circle.

On May 23, 2013 at approximately 1344hrs, Task Force members were conducting surveillance on Lyndon Miller who was engaging in a drug transaction in Gettysburg, PA. Miller was observed walking outside of Tito's Pizza. Miller was carrying what appeared to be a yellow, small box like object in his left hand. Miller entered his vehicle and left the area. Surveillance members observed Lyndon Miller as he traveled from Gettysburg directly back to his residence located at 4509 Lyons Run Circle, Owings Mills, Maryland.

During this surveillance operation, Detective Helf was set up on Miller's residence, waiting for his return. Upon Miller's return, Detective Helf observed Miller exit his rental vehicle carrying a yellow plastic bag and the black bag that he has been seen carrying on prior surveillances. Miller walked toward a white Dodge passenger vehicle displaying Maryland registration 6FHA53. Detective Helf advised that Miller had popped the trunk prior to getting to the vehicle. Detective Helf advised that Miller opened the trunk and looked inside. Miller then closed the trunk and entered 4509 Lyons Run Circle. Your affiants conducted an MVA check of the registration bearing 6FHA53 and learned that the vehicle registration displayed on a 2004 Dodge four door sedan and was listed to Sophia Lorraine Warmington, a B/F, with a date of birth of 10/20/67 of 4509 Lyons Run Circle, apt 303.

On Tuesday June 11, 2013, at 1000 hours, a call was intercepted between Lyndon Miller and a female identified as Cresta Spinks. During the call, Spinks requested that Miller come

ELH-13-0342

SW-0009

see her that day. Spinks has been identified during this investigation as an ounce level drug buyer. Therefore, based on Spink's request, your affiants were able to determine that Spinks was requesting Miller provide drugs in exchange for United States currency.

Following the initial conversation, electronic surveillance revealed that Miller, operating his rental vehicle, departed from the parking lot of his development. This indicated to your affiants that Miller departed from his residence of 4509 Lyons Run Circle in Owings Mills for the purpose of supplying Spinks with CDS.   Prior to Miller arriving at Spinks' residence, Miller and Spinks engaged in a follow up call, further confirming that Miller was going to travel to Spinks' residence.

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Lyndon Facisco Miller and the following was obtained:

| DATE: | CHARGE: | AGENCY: |
|---|---|---|
| 02/12/1998 | Fugitive from Justice | Baltimore City Police Department |
| 06/26/1998 | Drug Trafficking Possession of drugs | Hamilton County, Ohio |
| 09/22/1997 | Drug Trafficking | Cincinnati Police Department |
| 08/18/1997 | Drug Abuse | Cincinnati Police Department |

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Sophia Lorraine Warmington and the following was obtained:

| Date: | Charge: | Agency: |
|---|---|---|
| 09/18/2000 | Theft: $300 plus value | Anne Arundel County PD |

Consequently, based on the aforementioned surveillance, observations and investigation, your affiants have identified this as the residence of Lyndon Facisco Miller and female companion, Sophia Lorraine Warmington.  Your affiants have learned through numerous intercepted phone conversations that Lyndon Miller and Sophia Warmington are cocaine,

ELH-13-0342

SW-0010

heroin, and marijuana suppliers.

During this entire investigation, Miller would routinely depart his residence in possession of the drugs he intended to sell that day. Therefore, your affiants believe that Miller is using his residence to store drugs, money, and/or evidence of his crimes.

### 2004 Ford Van with Maryland registration 8AJ1740

During the course of the investigation, your affiants know that Lyndon Miller and Sophia Warmington have been using their 2004 Ford Van with Maryland registration 8AJ1740 to facilitate the distribution of cocaine to their co-conspirators.

Your affiants have already detailed events that took place regarding a CDS deal between Lyndon Miller and Sophia Warmington on May 14th 2013. During this transaction, Warmington utilized her 2004 Ford Van to pick up US currency that Miller had received from recent drug deals.

In addition to the events described above involving the utilization of the Ford Van to facilitate the drug organization, your affiants intercepted phone calls that lead them to believe that Miller is also storing drugs inside the Ford Van. During the investigation, an unrelated law enforcement officer knocked on Miller's residence door. It is unknown the agency or reason for the encounter, but Miller pretended not to be home. After the incident, your affiants intercepted calls, which lead them to believe that Miller had begun storing drugs inside the Ford Van.

Based on the totality of the circumstances, your affiants believe that the 2004 Ford Van owned by Lyndon Miller and Sophia Warmington, is being used frequently in the facilitation of their drug conspiracy.

### 2004 Dodge passenger car with Maryland registration 6FHA53

During the course of the investigation, your affiants know that Sophia Warmington has been using her 2004 Dodge passenger car with Maryland registration 6FHA53 to facilitate the distribution of cocaine to her co-conspirators.

Your affiants have already detailed events that took place regarding a CDS deal involving Lyndon Miller in Gettysburg, PA on May 23rd 2013. At the conclusion of this drug

SW-0011

ELH-13-0342

transaction, Miller utilized Sophia Warmington's 2004 Dodge passenger car that was parked in the parking lot of their apartment complex. There, Miller was observed looking inside of the trunk compartment of the Dodge bearing Maryland registration 6FHA53 prior to retreating into his apartment.

Based on the totality of the circumstances, your affiants believe that the 2004 Dodge passenger car owned by Sophia Warmington is being used frequently in the facilitation of their drug conspiracy.

### 2007 Toyota four door passenger vehicle, bearing Maryland registration 8BY X10

This 2007 Toyota four door passenger vehicle, bearing Maryland registration 8BY X10 is believed to be the primary vehicle operated by Warmington. Based on this knowledge, the method of operations of Miller and Warmington, which consist of storing of drugs inside vehicles and the involvement of Sophia Warmington as a co-conspirator of the drug organization, your affiants believe that Warmington may also be storing drugs, money or evidence of drug dealing inside this 2007 Toyota passenger vehicle.

2)  1546 Arena Road Street, Harford County, Maryland,

Your affiants have identified this address as the residence of Burton Duane Anderson. Your affiants have also found that Burton Anderson's girlfriend, Nancy Lee Akers, residences at the address on some occasions. Your affiants have learned through numerous intercepted telephone conversations that Akers is a cocaine distributor who has conspired with and works in conjunction with Lyndon Facisco Miller. During the month of May and throughout this investigation, Akers has frequently been observed leaving this address and meeting with Miller for drug transactions.

On May 9th, 2013 at approximately 1423 hrs, Akers telephoned Miller and requested to see him; your affiants have discovered through this investigation that Akers asks to meet with Miller on a regular basis in order to obtain a resupply of CDS. At 1650 hours, your affiants intercepted a telephone call from Akers to Miller in which Miller instructed Akers to meet him at location #2; location #2 has been identified through surveillance to be the area of East Nobles Road in Darlington, Harford County. Surveillance personnel observed both Miller and Akers in the area of Nobles Mill Road and Trappe Church Road. At approximately 1701

SW-0012

ELH-13-0342

hours, your affiants intercepted a call from Miller to Akers in which they talked about their meeting location. Miller stated that he has been doing his research and that he has established good spots where as not to draw attention. Miller further told Akers that the location was their own spot, "just me and you." Your affiants know that Miller routinely travels along secluded, low volume traffic roads to conduct his drug transactions. This technique is commonly used by drug dealers to avoid police detection and defeat vehicular surveillance.

On Wednesday, May 15, 2013, at approximately 1722 hours, your affiants intercepted what was believed to be a drug related conversation between Lyndon Miller and Nancy Akers. Akers asked Miller if he was around, this was in order to get a resupply of drugs. Miller arranged to meet with Akers at coded location #1 to conduct the transaction. Miller routinely uses coded messages in an attempt to thwart police action and avoid detection; location #1 has been previously identified as the area of Love Road and Smith Road in the Darlington area of Harford County.

Your affiants were able to conduct electronic surveillance of Miller's vehicle to location #1. Moments after arriving in the area, your affiants intercepted a telephone call between Miller and Akers in which Miller failed to terminate the phone call properly, resulting in an open line. During this conversation, Miller spoke freely with Akers, unaware that his phone line was still open. Your affiants were able to overhear Miller make several drug related statements, such as, "5 for $50. That is pure fucking coke!" and "it's the best!" and "cook it raw" and "20 grams" and "powerhouse coke." These statements are obviously drug related and not in code based on the reason that Miller believed he was only talking to Akers in person. Following the meet, surveillance members observed Akers as she traveled to 1546 Arena Road and entered the residence.

Following this May 15, 2013 drug deal, Nancy Akers and Burton Anderson informed Miller that they were robbed. Based on the phone calls, the alleged robbery was conducted by a few of Akers' buyers or a rival drug dealer. After the robbery, Miller refused to sell cocaine to Akers until things cooled down.

On Sunday, June 2, 2013, at 0955 hours, your affiants intercepted a drug related text from Nancy Akers to Lyndon Miller. During the text, Akers informed Miller that everyone

SW-0013

ELH-13-0342

has complained about a local drug supplier's cocaine. This call has led your affiants to believe that while Miller is waiting to sell drugs to Akers, Akers has found local side sources to supply her drug customers with cocaine. This text message indicates that Akers is getting complaints on the side sources' narcotics.

On Wednesday, June 8, 2013, at 2137 hours, your affiants intercepted a drug related conversation between Lyndon Miller and Nancy Akers. During this call, Miller discussed selling to Akers again in the future. Akers mentioned that her drug buyers keep calling.

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Nancy Lee Akers and the following was obtained:

| Date: | Charge: | Agency: |
|---|---|---|
| 06/24/2003 | THEFT:Less $500 value | Annapolis Police Department |
| 10/08/1999 | THEFT:Less $300 value | Anne Arundel County PD |
| 10/08/1999 | BD CK/utter/nsf/und $300 | Anne Arundel County PD |
| | BD CK/utter/nsf/und $300 | |
| 11/02/1990 | Obstructing & Hindering | Anne Arundel County PD |
| 08/09/1987 | Fraud-conversion/leased goods | Annapolis Police Department |
| | Fraud-conversion/leased goods | |
| | Theft/Felony X's (2) | |

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Burton Duane Anderson and the following was obtained:

| Date: | Charge: | Agency: |
|---|---|---|
| 11/20/2006 | Assault 2nd degree | Harford County Sheriff's Office |
| 07/13/2005 | CDS: Possess-not marijuana | Rising Police Department |
| | CDS: Possess-parphernalia | |
| 09/19/1998 | Assault 2nd degree | Harford County Sheriff's Office |
| | Violate Exparte/ Prot Order | |
| | Mal Dest of Prop + $300 | |
| 05/29/1995 | Mal Dest of Prop - $300 | Harford County Sheriff's Office |
| | Reckless Endangerment | |

ELH-13-0342

SW-0014

| 12/30/1992 | Battery | MSP North East |

### 3) 4200 Conowingo Lot B, Darlington, Harford County, Maryland

Your affiants have identified this address as the residence of Deanna Ilene Akers and Nancy Akers. Nancy Akers lives at this address on a part time basis and her involvement in the conspiracy has previously been described.

Your affiants have also learned through numerous intercepted telephone conversations that Deanna Akers is a cocaine distributor who has conspired with and works in conjunction with Lyndon Facisco Miller. During the month of May and throughout this investigation, Deanna and Nancy Akers have been observed at this address and meeting with Miller for drug transactions.

On May 17th, 2013, at approximately 0750 hours, your affiants intercepted a telephone call from Miller to Deanna Akers in which Deanna Akers asked Miller to "bring something." Deanna Akers continued by saying, "it was 3.5, but it was two, you understand?" and then referenced "playing pool" and "eight ball" and "I got the money." This leads your affiants to believe that Deanna Akers is requesting that Miller provide her with a total of 7.0 grams, or two "eight balls", which "eight ball" is common drug slang for an eighth of an ounce of cocaine. In a subsequent conversation, they arranged to meet later at New England Pizza located at 4202 Conowingo Road, Darlington, Harford County, which is directly in front of Deanna Akers' residence.

At approximately 1630 hours, surveillance observed Miller turn into the parking lot of New England Pizza, exit his vehicle wearing a traffic safety vest, enter the pizza shop briefly, and then walk over to trailer #8, which has been identified as Deanna Akers' residence. Surveillance personnel observed Miller meet with a caucasian female on the porch of trailer #8, and then enter the trailer through the front door; this female subject was positively identified as Deanna Akers. Within five minutes, Miller left the residence, returned to his vehicle, and left the area.

Within minutes of Miller leaving Deanna Akers' residence, surveillance observed a white PT Cruiser pull up and park in front of her trailer. The passenger exited the PT Cruiser, entered Akers' trailer, and within several minutes, returned back to his vehicle and

15

ELH-13-0342

SW-0015

left the area.  Your affiants know that this type of quick visit is indicative of street level drug transactions. Based on the intercepted phone calls where Deana Akers referenced the need to see Miller and the fact that she spoke in a coded conversation using common drug slang for requesting cocaine, your affiants believe that Deanna Akers is currently engaged in the distribution of cocaine in the Harford County area, specifically from her residence.

On May 21st, 2013 beginning at approximately 0556 hours, your affiants intercepted a text message and numerous subsequent phone conversations and additional text messages between Deanna Akers and Miller.  Deanna Akers repeatedly requested to meet with Miller and pressed Miller for a timeframe when he would be able to see her for a resupply of cocaine.  Throughout these conversations, Deanna made numerous drug references and continually asked when she could meet with Miller.  Deanna Akers used the following statements, "I got money" and "bring one and the leftovers" and "I only want the 200" and eventually stated, "I might need double".  Based on training, knowledge and experience, your affiants were able to interpret these phone calls to determine that Deanna Akers initially requested 3.5 grams of cocaine and approximately 1.5 grams of cocaine that Miller had shorted her in a previous drug transaction on May 17th, 2013; however, she eventually changed her request to a quarter ounce of cocaine, which is double the amount of 3.5 grams along with the approximate 1.5 grams of cocaine that Miller had shorted her in the previous drug transaction.  Surveillance members set up in the area of the Saint Mary Magdalene Church and Akers' trailer at 200 Conowingo Road.  At approximately 1932 hours, surveillance members observed Deanna Akers walking from her residence towards the church.  Approximately 3 minutes later, surveillance observed Deanna Akers standing on the parking lot of the church using her cell phone; this observation coincided with an intercepted phone call between Miller and Deanna Akers.  At 1944 hours, surveillance observed Miller as he picked up Akers at the church and continued on Route 440 and eventually pulled into a driveway just past the Broad Creek Bridge.

On Wednesday, June 6, 2013, at 0002 hours, your affiants intercepted a drug related conversation between Lyndon Miller and Nancy Akers.  During the call, Miller informed Akers that in less than two weeks he will start selling her cocaine again.  The two continue to discuss the robbery that occurred and that buyers keep calling Akers for drugs.

16

SW-0016

ELH-13-0342

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Deanna Ilene Akers and the following was obtained:

| Date: | Charge: | Agency: |
|---|---|---|
| 02/22/2012 | CDS: Possess Paraphernalia. | Harford Co. Sheriff's Office |
|  | CDS: Possess-Not Marijuana |  |
| 03/21/2009 | CDS: Possess Paraphernalia | Annapolis Police Department |

### 2004 Toyota 4 Runner with Maryland registration  M146009

During the course of the investigation and well preceding the time period discussed in this affidavit, your affiants know that Nancy Akers has been using her 2004 Toyota 4 Runner with Maryland registration  M146009 to facilitate the distribution of cocaine to her co-conspirators.

Your affiants have already detailed events that took place regarding a CDS deal between Lyndon Miller and Nancy Akers on May 8th 2012.  During this transaction, Akers utilized her 2004 Toyota 4 Runner.

Based on the totality of the circumstances, your affiants believe that the 2004 Toyota 4 Runner owned by Nancy Lee Akers is being used frequently in the facilitation of Miller's drug conspiracy.

### 4) 806 Wheeler School Road, Pylesville, Harford County, Maryland.

Your affiants have identified this address as the residence of Janie Pearl Brown. Your affiants have learned through several intercepted telephone conversations that Janie Brown is a cocaine distributor who has conspired with and works in conjunction with Lyndon Facisco Miller. During the month of May and throughout this investigation, Miller has traveled to the residence of Brown for the purpose of resupplying Brown with cocaine.

On May 14th, 2013 at approximately 1403 hours, your affiants intercepted a pertinent phone call from a female caller identified as Janie Brown to the target Miller in which Brown told him that she was calling for herself. Miller told Brown that he would come to her house

17

SW-0017

to see her.  Immediately following this phone call, Miller telephoned Sophia Warmington and told her that "the big woman" had just called him, apparently referring to Brown; however Miller was already on the highway.  Miller then requested Warmington to pick up the van and follow him to "collect paper"; surveillance has already identified this van as a 2004 Ford bearing MD registration 8AJ1740, being associated to Miller.  Case investigators believed that Miller was asking Warmington to meet him with the van so he can transfer the money gained from his drug transaction with Brown; your affiants know that Miller acts very cautiously during his drug transactions and does not want to drive around with a large amount of money and/or CDS with him.  Based on training, knowledge and experience, case investigators know this technique is employed by drug dealers to thwart police action and to prevent the seizure of both CDS and money.

At approximately 1600 hours, surveillance observed Miller, operating a rental Chevrolet Cruze bearing MD registration 2BA1415, arrive at Janie Brown's residence, and enter through the main door.  Approximately twelve minutes later, Miller left the residence and departed the area.

Following the transaction with Brown, case investigators intercepted additional phone conversations between Miller and Sophia Warmington.  During these calls, Miller gave directions to Warmington to meet him in Harford County, apparently to transfer the drug money gained from Brown.  Surveillance members later observed Miller and Warmington meeting briefly in the area of the Hollywoods / Seven Trails development along MD RT 7 in Harford County.

On Monday, May 20, 2013, at approximately 1558 hours, your affiants intercepted what was believed to be a drug related conversation between Miller and Janie Brown.  During the conversation Miller asked Brown if she "just wants one?"  Miller then reiterated, "one of the hard?"  Brown said "yeah that's cool.".  Your affiants believe this is a drug related coded conversation between Miller and Brown.  Specifically, your affiants believe Lyndon Miller referred to "one of the hard" as one ounce of crack cocaine and that he will be supplying it to Janie Brown.

On Tuesday May 21, 2013 at approximately 1707 hours, your affiants intercepted what

18

SW-0018

was believed to be a drug related conversation between Miller and Brown.  During the conversation, Brown asked Miller for the "one" she had asked him to bring for a friend on May 20th and she will give Miller the money the following day. Brown advised Miller that the "one" is for her friend Anne. This conversation clearly shows that Brown is redistributing the crack cocaine supplied by Miller.

On Monday June 10, 2013 at 1401 hours, your affiants intercepted a drug related conversation between Miller and Brown.  During the conversation, Brown requested Miller brings "two of them." Your affiants know that the statement, "two of them" referred to two ounces of cocaine.

Later that evening, surveillance was conducted of Miller traveling to Brown's residence on Wheeler School Road. Based on the phone call, surveillance observations and investigation, your affiants believe that Miller delivered two ounces of cocaine to Brown.

That same evening at 2023 hours, a call was intercepted between Miller and Brown. During the call, Brown complained to Miller that the bag was about "two short." Your affiants believe that Brown was complaining that the two ounces of cocaine Miller sold her had been several grams short.   Miller informed Brown that he has her, which indicated that he would make up for the shortage on a later date.

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Janie Pearl Brown and the following was obtained:

| Date: | Charge: | Agency: |
|---|---|---|
| 10/12/2007 | CDS: Poss. W/Int Dist. Narc. | Harford Co. Sheriff's Office |
| 04/18/1990 | Dist. CDS | MSP Narcotics Unit, Jessup |
|  | Poss. CDS | Harford Co. Circuit Court |
| 02/28/1990 | Poss. W/I Dist | Harford C. Circuit Court |
|  | Poss. W/I Dist. |  |
| 01/26/1990 | CDS: Manufact./Distribute | MSP Narcotics Unit, Jessup |
| 07/12/1988 | CDS-Unlawful MFGR | Harford Co. Sheriff's Office |
| 07/12/1988 | CDS-Unlawful Poss. | Harford Co. Sheriff's Office |
|  | CDS-Unlawful Poss. |  |
| 07/12/1988 | CDS-Para/Use Poss. W/ Intent | Harford Co. Sheriff's Office |

19

SW-0019

### 5) 1410 Willow Oak Road, Edgewood, Harford County, Maryland.

Your affiants have identified this address as the residence of Cresta Michelle Spinks. Your affiants have learned through several intercepted telephone conversations that Spinks has conspired with and works in conjunction with Lyndon Facisco Miller. During the month of May and throughout this investigation, Spinks has been observed at this address and meeting with Miller for drug transactions. Your affiants know, from previous unrelated investigations, that Cresta Spinks lives at 1410 Willow Oak Road, Edgewood, Harford County. Furthermore, your affiants know through law enforcement database checks that the phone number utilized in the following conversations comes back to Cresta Spinks.

On Thursday, May 9th, 2013 at approximately 1147 hours, your affiants intercepted a drug related phone conversation between the target Miller and a female subject, believed to be Cresta Spinks. During this conversation, Spinks asked Miller if she could "talk on the phone, real quick", to which Miller replied to talk "proper English". Your affiants know that drug dealers routinely instruct their underlings not to talk drug business over an open phone line in order to defeat police techniques used to intercept these phone conversations. In addition, drug dealers also frequently use codes and vague dialogue to conduct their drug business in the hopes of avoiding prosecution in the chance that they are in fact intercepted by the police. Your affiants believe that when Miller instructed Spinks to speak proper English, he was reminding her not to use open drug conversation. Spinks then asked Miller that if she gave Miller the "payment thing" if Miller could give her the "bigger one". Spinks continued to plead with Miller to give her a chance with the "larger one" and that Miller can pick up the payment on Saturday. Based on this conversation, your affiants believe that Spinks owes Miller money from previous drug transactions and now, Spinks is asking for a larger quantity of CDS, possibly one ounce, based on the statements, "bigger one" and "larger one".

At approximately 1600 hours, your affiants intercepted a phone call in which Miller told Spinks to come out. At the same time, surveillance members observed Miller pull into Spinks' neighborhood and subsequently onto Willow Oak Road. Within minutes, Miller left Willow Oak Road and departed the area.

SW-0020

ELH-13-0342

On Thursday, May 23rd 2013, your affiants intercepted a series of phone calls between Lyndon Miller and a female believed to be Cresta Spinks. During these conversations, Lyndon Miller arranged to meet Cresta Spinks at her residence, identified as 1410 Willow Oak Drive in Edgewood.

Surveillance members arrived in the area ahead of Miller and parked in a position to be able to observe the driveway and front of the house. At approximately 1645 hours, surveillance observed Lyndon Miller, operating his black Ford Focus rental vehicle with Maryland registration 8BB4559, as he pulled onto Willow Oak Drive. He initially drove past the driveway, then turned around, came back, and pulled into the driveway of 1410. At this time, surveillance saw a Caucasian female wearing a yellow shirt with a pink design exit the side door of the residence and walk to the passenger side of Miller's car. The female had very dark hair below the shoulders, and appeared to be approximately 5'06 / 170 lbs. Surveillance members were not able to see her face clearly because of thick tree cover; however, based on the address, physical characteristics, and intercepted telephone calls in which Miller has referred to her as "Cresta", your affiants believed that this female was in fact, Cresta Spinks. Spinks entered the passenger seat of Miller's vehicle with the door open for only about 45 seconds. She then exited and returned to the house. Miller backed out of the driveway and left the area. Surveillance also noted that Miller was wearing his traffic safety vest as he has been previously observed wearing during drug transactions. Your affiants know this type of meeting is consistent with a CDS transaction.

On Tuesday June 11, 2013, at 1000 hours, a call was intercepted between Lyndon Miller and Cresta Spinks. During the call, Spinks requested if Miller could come see her that day and Miller agreed. Based on the phone call and investigation, your affiants were able to determine that Spinks was requesting Miller provide drugs in exchange for U.S. currency. During a follow-up call between Miller and Spinks, they agreed to meet at Spinks' residence.

Following the conversations, electronic surveillance was conducted and revealed that Miller traveled to the area of Cresta Spinks' residence on Willow Oak Drive.

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for

ELH-13-0342

SW-0021

information and criminal history pertaining to Cresta Michelle Spinks and the following was obtained:

| Date: | Charge: | Agency: |
|---|---|---|
| 09/07/2007 | Mal. Dest. Prop/Value - $50<br>Deadly Weapon-Int./Injure<br>Dangerous Weapon | Ocean City Maryland Police |
| 07/06/2004 | Theft: Less $500<br>Theft: Plus $500<br>Rogue and Vagabond<br>Mal Dest. Prop/Value $500<br>Forgery-Priv. Documents<br>Uttering False Document | Harford County Sheriff's Office |
| 07/06/2004 | Theft-Scheme: $500 Plus | Harford County Sheriff's Office |
| 06/02/2004 | CDS: Not Marijuana<br>CDS: Poss. Marijuana<br>CDS Pack Mater Poss./Dist. | Harford County Sheriff's Office |
| 05/29/2004 | Theft: $500 Plus Value | Harford County Sheriff's Office |
| 05/29/2004 | Con: Theft $500 Plus | Harford County Sheriff's Office |
| 05/17/2004 | Theft $500 Plus value<br>Burglary/2nd degree<br>Con: Burglary 2nd degree<br>Burglary 4th degree<br>Theft: $500 Plus<br>Mal Dest. Prop - $500 | Harford County Sheriff's Office |
| 05/03/2004 | Mal. Dest. Property $500<br>Mal. Dest. Prop. - $500<br>Rogue and Vagabond<br>Burg Tools-Mot./Veh/Poss | Harford County Sheriff's Office |
| 04/06/2004 | Theft over $500 | Bel Air Police Department |
| 06/29/2003 | CDS Violation<br>CDS: Poss. Marijuana | Baltimore City Police Department |

## 6) 2648 Gatehouse Drive, Baltimore, Maryland, 21207

Your affiants have identified this address as the residence of Tamesha Danielle Copes. Your affiants have learned through many intercepted telephone conversations that Copes is a distributor of powder cocaine, crack cocaine, and prescription pills, and has conspired with and works in conjunction with Lyndon Facisco Miller. During this investigation, Copes was observed at this address immediately following a drug transaction with Lyndon Miller. Your

22

ELH-13-0342

affiants know through law enforcement database checks that the phone number utilized in the following conversations comes back to Tamesha Danielle Copes.

On May 18th, 2013, at approximately 1206 hours, your affiants intercepted a drug related phone conversation between Lyndon Miller and Tamesha Copes. During this call, Miller told Copes that he has a friend that wants "skittles," your affiants believe this is code for prescription pills. The conversation continued with Copes using vague terms to describe the fact that she has 40, 10mg pills available and is selling them for $10.00 each; Copes further explained that whatever the number is (milligram wise), that would be the cost of the pill ($1.00 per milligram). Your affiants intercepted a phone call the following day in which Miller and Copes continued their conversation about selling prescription pills. Copes explained to Miller that she is unwilling to sell her pills for wholesale prices but may be interested in selling the pills to Miller's friend for either $8.00 or $9.00 per pill. Based on these two calls, your affiants discovered that Copes is a distributor of prescription pills. Additionally, these calls clearly showed Miller acting as a middle man to conspire to sell and distribute prescription pills.

On May 19th, 2013 at approximately 0757 hours, your affiants intercepted a text message from Copes to Miller in which she stated "…I need u asap." Additional related phone conversations were intercepted in which Copes and Miller talked in coded and vague terms and arranged to meet at Copes' residence later in the day. During these calls, Miller explained that he was "multi-tasking," a term that he has used many times throughout this investigation to mean that he was driving to and supplying several drug customers during one run. Electronic surveillance placed Miller on Gatehouse Drive in Baltimore at approximately 1033 hours.

On May 31st, 2013 at approximately 2241 hours, your affiants intercepted a text message from Copes stating, "I need that ASAP please im out." Your affiants know that this type of message indicated that Copes was out of drugs to sell and was requesting a resupply from Miller. Your affiants intercepted a series of related phone calls on June 1st, 2013 in which Miller asked Copes if she wanted her "regular thing" and Copes answered that she wanted Miller to get her some, "Jolly Ranchers, the hard and soft ones." Your affiants know

23

that the terms "hard" and "soft" are commonly used by drug dealers and users to refer to crack cocaine and powder cocaine. They originally made plans to meet at Copes' residence at 2648 Gatehouse Drive and at approximately 1412 hours, electronic surveillance placed Miller's vehicle on Gatehouse Drive. At the same time, your affiants intercepted a phone call in which Miller left a voicemail message for Copes telling her that since she is not home, he is not sitting there with "this thing," and will see her tomorrow. Copes called Miller back and they arranged to meet at a local gas station near Copes' residence; surveillance was sent to cover this drug transaction, but was unable to personally observe the meet. Electronic surveillance, however, placed Miller's vehicle at the gas station and based on additional phone calls, your affiants believed that Miller and Copes met at this same gas station and parted ways shortly thereafter. The surveillance team responded directly to 2648 Gatehouse Drive and, within minutes of their arrival, observed a female subject who they were able to positively identify as Tamesha Copes, exit the front door of 2648 Gatehouse Drive. Surveillance then observed Copes as she entered the driver's seat of a Ford truck bearing Maryland registration T741811 and drove away.

On June 10, 2013 at 2339 hours, your affiants intercepted a text message from Copes to Miller in which she stated "This is what he keep sending me. We got to get on it...Call me when u get the chance. I got plenty of ppls lookin to test, so we can get it movin!" Based on this text, your affiants believe that Copes was requesting Miller to supply her with heroin, because she had buyers ready to test the quality.

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Tamesha Danille Copes, which reveal no criminal record.

### 2006 Ford with Maryland registration T741811

During the course of the investigation your affiants believe that Copes has used her 2006 Ford with Maryland registration T741811 to facilitate the distribution of cocaine to her co-conspirators.

SW-0024

ELH-13-0342

Your affiants have already detailed events that took place regarding a CDS deal between Lyndon Miller and Tamesha Copes on May 31st 2013. Immediately following a drug transaction with Lyndon Miller, Copes utilized her 2006 Ford.

Based on the totality of the circumstances, your affiants believe that the 2006 Ford owned by Tamesha Copes is being used frequently in the facilitation of this drug conspiracy.

7)   **8890 Papillion Drive, Ellicott City, Howard County, Maryland 21043**

Your affiants have identified this address as the residence of Donna Yvette Jones, AKA "Buffy". Your affiants have learned through many intercepted telephone conversations that Jones is a distributor of powder cocaine and crack cocaine and has conspired with and works in conjunction with Lyndon Facisco Miller. During this investigation, Jones was observed at this address during a drug transaction with Lyndon Miller. Your affiants know through law enforcement database checks that the phone number utilized in the following conversations is associated with Donna Yvette Jones.

Beginning on May 14th, 2013 and continuing the next day, your affiants intercepted drug related telephone conversations between Miller and Jones. During these conversations, Miller asked Jones for a "hint" of what she wanted, Jones answered, "like the other day." The answer given by Jones clearly establishes a pattern and shows a history of drug transactions between Miller and Jones.  Jones referenced "playing pool" and continued that she also wanted an "eight ball thing," which your affiants know is a code word commonly used by drug dealers and users to mean $1/8^{th}$ of an ounce of cocaine or crack cocaine. Jones further explained that in addition to the "'eight ball," she needed, "a quart of milk," which your affiants believe is code for a quarter ounce of cocaine. Based on the conversation, your affiants believe that Jones is asking for $1/8^{th}$ of an ounce of crack cocaine in addition to her regular amount of one quarter of an ounce of powder cocaine. Electronic surveillance later placed Miller's vehicle in the 8800 block of Papillion Drive, Ellicott City.

On May 24th 2013, your affiants intercepted communications between Jones and Miller in which they arranged to meet in the afternoon at Jones' residence. At approximately 1420 hours, surveillance observed Miller drive past 8890 Papillion Drive and park approximately

25

SW-0025

ELH-13-0342

ten houses away, despite the fact that there were numerous parking spaces available which were closer.  At approximately 1433 hours, surveillance observed a Lexus bearing Maryland Registration 9AE6586 pull onto Papillion Drive.  The Lexus was being driven by a black female, who was later positively identified as Donna Yvette Jones.  Jones parked in front of 8890, exited her vehicle and entered 8890 Papillion Drive through the front door. Approximately five minutes later, surveillance observed Miller exit his vehicle and enter 8890 Papillion Drive through the front door

Miller remained inside until 1500 hours, when he and Jones exited together.  They entered their respective vehicles and parted ways.  Based on this investigation and through training, knowledge, and experience, your affiants recognized this as being consistent with CDS activity.

On June 9th, 2013, your affiants intercepted a call between Jones and Miller.  During the call Jones informed Miller of her drug order.  Jones mentioned they want football or softball.  These code words lead your affiants to believe that Jones wanted an eight ball of cocaine, which is 1/8th of an ounce of cocaine or 3.5 grams.  Jones then informed Miller of money problems she was having and requested if Miller could give her a few days to pay him. Miller agreed to accept a late payment.

Your affiants caused a check to be made through the MVA, the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Donna Yvette Jones, which revealed no criminal history.

<u>2006 Lexus with Maryland registration 9AE6586</u>

During the course of the investigation your affiants believe that Jones has used her 2006 Lexus with Maryland registration 9AE6586 to facilitate the distribution of cocaine to her co-conspirators.

Your affiants have already detailed events that took place regarding a CDS deal between Lyndon Miller and Donna Jones on May 24th 2013.  During this transaction, Jones utilized her 2006 Lexus during a drug purchase with Miller.

Based on the totality of the circumstances, your affiants believe that the 2006 Lexus

26

SW-0026

ELH-13-0342

owned by Donna Yvette Jones is being used frequently in the facilitation of his drug conspiracy.

8)   <u>522 1st Street, Aberdeen, Harford County, Maryland 21001.</u>

Your affiants have identified this address as the residence of Greg Allen Pringle, a black male, 5'9", 195 pounds, date of birth ██████████   Your affiants are aware that Greg Pringle is a local Harford County, Maryland drug dealer.  Since 2010, the Harford County Task Force has received multiple tips and information indicating that Greg Pringle is selling cocaine.  The most recent information received was from a past, proven, reliable confidential informant, who alleged that Pringle is selling cocaine and living near Baltimore Street in Aberdeen, Harford County.  Pringle's address of 522 1st Street is just off Baltimore Street which corroborates the informant's information.

On June 10th, 2013 at 1941 hours, your affiants intercepted a phone call between Miller and Greg Pringle.  During the call, Pringle indicated that he had been trying to get a hold of Miller with no luck; Miller had recently changed phone numbers.  Pringle then requested if Miller could come to see him.  Miller arranged to meet Pringle the following day.  Based on training, knowledge, and experience, and specifically your affiants' in depth knowledge of this particular investigation involving the target Miller, your affiants know that this short vague conversation in which Pringle simply asked to see Miller is indicative of Miller's method of operation in which he exercises caution in talking about his drug business over the telephone. It has been established that Miller is extremely vigilant in regards to conducting drug business on the phone because he is familiar with police tactics used to intercept phone conversations. In his attempts to defeat these tactics, Miller consistently uses vague and coded conversations, drops phone lines regularly, and reprimands his co-conspirators when they talk openly about drugs on the phone.  Based on this knowledge, your affiants are confident that the meeting arranged by Miller to see Pringle the following day is for the reason of supplying Pringle with an amount of narcotics.  It is also known based on this conversation that Miller and Pringle have a history with one another, and furthermore, it is known that Pringle has a history of drug possession / distribution based on his criminal history and amount of drug related tips

SW-0027

ELH-13-0342

which would show Pringles' familiarity with Miller's requirements for cautious and limited conversation.

On June 11th, 2013, surveillance was conducted on Miller. Surveillance observed Miller as he departed his residence in Owings Mills, operating a new rental vehicle, a white Hyundai Sonata displaying Maryland registration 8BA0402. Surveillance followed Miller to the Aberdeen area of Harford County. At approximately 1253 hours, surveillance members observed Miller making a U-turn on Cornell Street. Miller then stopped along Cornell Street in front of a yellow house at the corner of Cornell Street and 1st Street. Miller parked and remained in his vehicle for a period of time. At approximately 1308 hours, surveillance members drove past the residence and advised that Miller and a subject believed to be Greg Pringle were on the porch of 522 1st Street, Aberdeen.

Based on the intercepted call, surveillance, and knowledge of this investigation, your affiants believe that Miller, sold narcotics to Greg Pringle.

On June 11th, 2013, at approximately 1548 hours, your affiants intercepted a telephone conversation between Miller and Pringle in which Miller asked to see Pringle the following day. Based on training, experience, and knowledge of this case, your affiants believe that Miller fronted an amount of narcotics to Pringle the day before and is scheduling a time to see Pringle for the full payment for the narcotics provided. Your affiants know that Miller frequently fronts his drug customers drugs and collects the payment at a later date.

On June 12th, 2013, at approximately 1227 hours, electronic surveillance placed Miller in the area of Pringles' residence on 1st Street, Aberdeen.

Your affiants caused a check to be made through the MVA, and located Greg Allen Pringle, 5'9, 195 lbs, having a date of birth of [REDACTED] listed with his old address of 432 N. Philadelphia Blvd, Aberdeen, Maryland 21001. Your affiants caused a check through the National Crime Information Center (NCIC) and the Criminal Justice Information System (CJIS) for information and criminal history pertaining to Greg Pringle and the following was obtained:

28

SW-0028

| Date: | Charge: | Agency: |
|-------|---------|---------|
| 05/14/1986 | CDS – Unlawful Possession ETC<br>Poss of Paraphernalia | Baltimore County PD |

## YOUR AFFIANTS BACKGROUND AND EXPERTISE:

The name of your first affiant is Detective Aaron Penman. Your affiant, Penman, has been a member of the Harford County Sheriff's Office for over 13 years. Prior to that, your affiant was employed as a correctional officer at the Harford County Detention Center for the Harford County Sheriff's Office and by the United States Marine Corps as an infantry machine gunner.

Your affiant, Penman, has successfully completed a six-month Maryland Police Training Academy instructed by the Harford County Sheriff's Office training division and mandated by the Maryland Police Training Commission. During that course of instruction, your affiant Penman received specialized training in the identification and investigation of controlled dangerous substance violations. After completing the Training Academy, your affiant Penman was assigned to the Criminal Patrol Division for four years, during which time he made a large amount of arrests for violations of controlled dangerous substance laws. Next, your affiant Penman was assigned for approximately one year with the Harford County Sheriff's Office Gang Suppression Unit as an investigator of violent organized gang crime.

Your affiant, Penman, is currently assigned to the Harford County Task Force and works in a covert capacity investigating middle to upper level drug investigations and cases involving drug trafficking. Your affiant, Penman, has been assigned to the Harford County Task Force since November of 2005. Your affiant, Penman, has actively participated in or conducted numerous narcotics investigations. Your affiant, Penman, has authored and/or participated in hundreds of search and seizure warrants for violations of the laws pertaining to controlled dangerous substances where illegal drugs, monies and assets were seized and persons charged with CDS violations to include felony and misdemeanor charges.

Your affiant, Penman, has had the opportunity to debrief both defendants and street informants. Through these debriefs and drug investigations, your affiant, Penman, has been able to gain firsthand knowledge of the drug culture, including methods of ingestion, concealment, packaging, prices, distribution and drug terminology through his 13 years of law enforcement

29

SW-0029

ELH-13-0342

experience.

Your affiant, Penman, has worked with confidential informants and actively participated in numerous undercover buys of controlled dangerous substances where he was able to gain firsthand knowledge about the actions, traits, habits and terminology utilized by drug traffickers.

Your affiant, Penman, knows from his training and experience that organized drug dealers maintain books, records, receipts, notes, ledgers, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled dangerous substances.

Your affiant, Penman, avers that in the course of his training and experience in the investigation of controlled dangerous substances violations, he has found that the use and distribution of controlled dangerous substances is a regenerative activity, that a portion of the proceeds from the sale of controlled dangerous substances is used to buy more for resale.

Further, your affiant, Penman, avers that, during his training and experience, it is common practice for persons involved in drug trafficking, to take items in the place of cash for drugs. These items may include, but not limited to, weapons, audio/visual equipment, appliances, and motor vehicles.

Your affiant, Penman, has been actively assigned to and participated in court ordered wiretaps, during which he has become familiar with the operational procedures of wiretap investigations and drug terminology used by the participants on the telephone. Your affiant, Penman, has authored numerous court ordered wire taps in the past, and has been a plant monitor and/or conducted surveillance for dozens of court ordered wiretap investigations. During this time, your affiant, Penman, has intercepted hundreds of telephone calls pertaining to illegal distribution of narcotics. Based on these intercepted telephone calls, dozens of persons have been successfully charged and convicted of felony drug charges. Furthermore, based on court ordered wiretap investigations in which your affiant, Penman, has authored or participated in, hundreds of thousands of dollars in United States currency, along with assets and large quantities of narcotics have been seized.

Your affiant, Penman, has successfully completed hundreds of hours of narcotic training from several schools to include, but not limited to, Top Gun Narcotic Investigator's Course at the Northeast Counter Drug Training Center, Drug Enforcement for the Patrol Officer, Detecting the

30

SW-0030

Drugged Driver, Current Drug Trends, Methamphetamine Laboratories and John Reid's Street Crime Seminar. Furthermore, your affiant Penman has received additional instruction from the Mid Atlantic Great Lakes Organized Crime Law Enforcement Network (MAGLOCLEN). Your affiant, Penman, is also a certified Maryland Police and Corrections Training Commission Instructor.

Your affiant, Penman, has attended a two month narcotic detector K – 9 course, provided by the New Castle County Police K – 9 Training Unit. During this time, your affiant, Penman, trained a certified narcotics detector dog and was certified as a K – 9 handler. Since the completion of the initial K – 9 training course, your affiant, Penman, along with his certified detector dog "Ginger" have been nationally certified through the National Police Canine Association. Based on training and certifications, "Ginger's" field usage has resulted in over 60 arrests; and the seizure of large amounts of cocaine, marijuana, heroin, methamphetamines, guns and United States currency.

The name of your second affiant is Detective Thomas Gregory. Your affiant, Gregory, is a graduate of Johns Hopkins University and possesses a Master's of Science Degree in Management. Your affiant, Gregory, has been a member of the Harford County Sheriff's Office for over 11 years. Prior to that, your affiant, Gregory, was employed as a Police Officer at the Town of Bel Air Police Department for approximately four years, and a Police Officer with the Village of Hudson Falls Police Department in Upstate New York for three years. As a lateral hire with the Town of Bel Air Police Department, your affiant, Gregory, has successfully completed the six week MPCTC comparative compliance training hosted by the Prince Georges County training academy. Your affiant, Gregory, also successfully completed a six-month New York State Police Training Academy instructed by the Village of Hudson Falls Police Department training division and mandated by the New York State Bureau of Municipal Police. During that course of instruction, your affiant, Gregory, received specialized training in the identification and investigation of controlled dangerous substances violations. After completing the Training Academies, your affiant, Gregory, was assigned to the Criminal Patrol Division for 13 years, during which time your affiant made hundreds of arrests for violations of controlled dangerous substances laws. Your affiant, Gregory, was assigned for approximately three years with the Harford County Sheriff's Office Community Action Response Team as an investigator of violent organized gang crime.

Your affiant, Gregory is currently assigned to the Harford County Task Force and works in a

SW-0031

ELH-13-0342

covert capacity investigating middle to upper level drug investigations and cases involving drug trafficking. Your affiant, Gregory, has been assigned to the Harford County Task Force since February of 2011. Your affiant, Gregory, has actively participated in or conducted numerous narcotics investigations. Your affiant, Gregory, has authored and/or participated in hundreds of search and seizure warrants for violations of the laws pertaining to controlled dangerous substances where illegal drugs, monies and assets were seized and persons charged with CDS violations to include felony and misdemeanor charges.

Your affiant, Gregory, has had the opportunity to debrief both defendants and street informants. Through these debriefs and drug investigations, your affiant, Gregory has been able to gain first-hand knowledge of the drug culture, including methods of ingestion, concealment, packaging, prices, distribution and drug terminology through his 13 years of law enforcement experience.

Your affiant, Gregory, has worked with confidential informants and actively participated in numerous undercover buys of controlled dangerous substances where he was able to gain first-hand knowledge about the actions, traits, habits and terminology utilized by drug traffickers.

Your affiant, Gregory, knows from his training and experience that organized drug dealers maintain books, records, receipts, notes, ledgers, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled dangerous substances;

Your affiant, Gregory, avers that in the course of his training and experience in the investigation of controlled dangerous substances violations, he has found that the use and distribution of controlled dangerous substances, is a regenerative activity, that a portion of the proceeds from the sale of controlled dangerous substances is used to buy more for resale.

Further, your affiant, Gregory, avers that, during his training and experience, it is common practice for persons involved in drug trafficking, to take items in the place of cash for drugs. These items may include, but not limited to, weapons, audio/visual equipment, appliances, and motor vehicles.

Your affiant, Gregory, has been actively assigned to and participated in court ordered wiretaps, during which he has become familiar with the operational procedures of wiretap investigations and drug terminology used by the participants on the telephone. Your affiant,

32

SW-0032

ELH-13-0342

Gregory, has co-authored court ordered wire taps in the past, and has been a plant monitor and/or conducted surveillance for dozens of court ordered wiretap investigations. During this time, your affiant, Gregory, has intercepted hundreds of telephone calls pertaining to illegal distribution of narcotics. Based on these intercepted telephone calls, dozens of persons have been successfully charged and convicted of felony drug charges. Furthermore, based on court ordered wiretap investigations in which your affiant has authored or participated in, hundreds of thousands of dollars in United States Currency, along with assets and large quantities of narcotics have been seized.

The name of your third affiant is Senior Trooper Neil J. Miranda of the Maryland State Police currently assigned to the Harford County Task Force. Your affiant has been a police officer for approximately 17 years and has attended yearly in-service training courses each year. Your affiant, Miranda, has been a member of the Drug Enforcement Division for approximately three years. In July 1996 your affiant, Miranda, attended the 26-week Maryland State Police Academy that included courses of training in Constitutional Law, Maryland State Law, and the enforcement of the controlled dangerous substance laws of Maryland. In January 1999, your affiant, Miranda, attended a two-day training course, Street Survival '99, provided by Caliber Press in which there was a significant focus in the area of detection and identification of street level narcotics. In November 2000, your affiant, Miranda, attended a three-day course entitled Strategies for Criminal Interdiction provided by the Education and Training Division of the Maryland State Police. The course of study focused heavily on the techniques employed by drug traffickers and proactive enforcement by police. In September 2002, your affiant, Miranda, attended a week-long Interview and Interrogation School provided by the Maryland State Police at the Professional Development Unit. Between September 1997 and February 2008, your affiant, Miranda, was assigned to the Maryland State Police Bel Air Barrack in the role of uniformed patrol. During this time, your affiant, Miranda, handled and assisted on numerous calls for service that involved various violations of the controlled dangerous substance laws of this state. In February 2008, your affiant, Miranda, was assigned to the Kent County Narcotics Task Force where he received training in current drug laws of the State of Maryland as well as all aspects of controlled dangerous substance investigations. In April 2008, your affiant, Miranda, attended and successfully completed the week-long "Top Gun" Undercover Drug Law Enforcement Training hosted by the National Counter Drug Training Center and the

33

ELH-13-0342

Maryland State Police. This training covered the numerous aspects of covert drug investigations as well as courtroom preparation and presentation. In May 2008, your affiant, Miranda, attended an eight-hour course presented by the Cecil County Department of Emergency Services in regards to clandestine drug labs. This course of study focused mainly on current clandestine lab trends and how to recognize a clandestine lab, with a heavy focus on methamphetamine labs and methamphetamine use. In May 2008, your affiant, Miranda, attended a two-day course entitled Indoor Marijuana Investigator's Course, offered by the Midwest Counterdrug Training Center. In addition, your affiant, Miranda, continued this course of study with an eight hour training course entitled Outdoor Aerial Spotting, during the same week. These two training courses focused exclusively on all aspects involved in the cultivation, identification and eradication of both indoor and outdoor marijuana grow sites. This training further exposed your affiant, Miranda, to both indoor and outdoor controlled marijuana grows and allowed your affiant the opportunity to spot and identify a controlled grow from an aerial view. In September 2008, your affiant, Miranda, attended the Narcotic Investigators Information Sharing Conference hosted by the Middle Atlantic-Great Lakes Organized Crime Law Enforcement Network (MAGLOCLEN). This conference consisted of three days of instruction on various drug related law enforcement techniques to include highway drug interdiction, roadside interrogation and hidden compartments, pharmaceutical drugs, narcotic enforcement in relationship to gangs, and proper planning and execution of undercover operations. In October 2008, your affiant, Miranda, attended the two-day course entitled Basic Audio Intercept for Law Enforcement. This course offered both classroom participation and practical application of various types of sophisticated surveillance equipment, to include, but not limited to, a heavy focus on body wires. In April 2009, your affiant, Miranda, was reassigned to the Harford County Task Force. In June 2009, your affiant, Miranda, attended an eight hour course offered by Signal 13 Training entitled Advanced Narcotics Investigations. This workshop consisted of training in developing and managing informants, financial and asset forfeiture investigations, recognition and interpretation of drug ledgers, developing and prosecuting conspiracy investigations, and many aspects of cell phone exploitation.

In September 2010, your affiant, Miranda, attended the 20th annual Narcotic Investigators Information Sharing Conference hosted by the Middle Atlantic-Great Lakes Organized Crime Law

34

SW-0034

ELH-13-0342

Enforcement Network (MAGLOCLEN). This conference consisted of three days of training on various drug related law enforcement techniques to include various gang and cartel drug trafficking trends, digital resources and surveillance, highway drug interdiction, roadside interrogation and hidden compartments, pharmaceutical drugs, regional drug prices and current drug-related trends, and the proper planning and execution of undercover drug buys and takedowns.

During his time as a member of the Drug Enforcement Division, your affiant, Miranda, has been a part of five wiretap investigations. During these wiretap investigations, your affiant has either been a plant monitor or a member of surveillance. Your affiant, Miranda, has overheard thousands of intercepted telephone conversations that pertain to illegal drugs and money. Based on these intercepted telephone calls, your affiant, Miranda, has gained a great knowledge of the type of cryptic and coded conversations drug dealers often utilize while arranging drug transactions over the telephone.

All of the aforementioned training included instruction in the identification and investigation of controlled dangerous substance violations, prices, methods of packaging, concealment, terminology, methods of consumption, effects of controlled dangerous substances, methods of distribution, and/or routes of import and distribution. Your affiant, Miranda, has actively participated in the service of over 100 search and seizure warrants. Your affiant, Miranda, has arrested or assisted in the arrest of numerous persons for violations of the controlled dangerous substance laws of this State and has followed through with these cases to see convictions.

Your affiants aver that based on the totality of the circumstances, your affiants' training, knowledge, and experience acquired during the aforementioned schools and investigations, the calls intercepted during the course of the Ex Parte Wire Tap, activity observed on surveillance, CDS recovered during arrests related to the investigation, that there is probable cause to believe and your affiants do believe, that the laws relating to the manufacturing, sale and /or possess with the intent to distribute and/ or possession of controlled dangerous substances, as herein before cited, are being violated in and upon said premises before described as:

35

ELH-13-0342

SW-0035

1) 4509 Lyons Run Circle, apartment 303, Owings Mills, Baltimore County, Maryland and are being violated by Lyndon Facisco Miller, B/M DOB: 05-11-65 and Sophia Lorraine Warmington, B/F DOB; 10-20-67.

2) 1546 Arena Road, Street, Harford County, Maryland and is being violated by Nancy Lee Akers, W/F DOB:███████, and Burton Duane Anderson, W/M, DOB:████████

3) 4200 Conowingo Road Lot B, Darlington, Harford County, Maryland and is being violated by Deanna Ilene Akers, W/F DOB:███████ and Nancy Lee Akers, W/F DOB:████████

4) 806 Wheeler School Road, Pylesville, Harford County, Maryland and is being violated by Janie Pearl Brown, W/F, DOB:████████

5) 1410 Willow Oak Road, Edgewood, Harford County, Maryland and is being violated by Cresta Michelle Spinks, W/F DOB:████████

6) 2648 Gatehouse Drive, Baltimore, Maryland 21207 and is being violated by Tamesha Danielle Copes, B/F DOB:████████

7) 8890 Papillion Drive, Ellicott City, Howard County, Maryland 21043 and is being violated by Donna Yvette Jones, B/F DOB:████████

8) 522 1ˢᵗ Street, Aberdeen, Harford County, Maryland 21001 and is being violated by Greg Allen Pringle, B/M, DOB:████████

36

SW-0036

ELH-13-0342

## AND THE FOLLWING LISTED VEHICLES

9)    White 2004 Ford Van bearing Maryland registration 8AJ1740, VIN 2FTZA546X4BB05990, registered to Charmaine Sharon Reid Coldiron, a black female, date of birth of███████at 7822 Woodside Terrace APT T-4, Glen Burnie, Maryland 21061.

10)   White 2004 Dodge passenger car bearing Maryland registration 6FHA53, VIN 1B3EL36X24N117446, registered to Sophia Lorraine Warmington, a black female, date of birth of 10/20/67 at 4509 Lyons Run Circle, apartment 303, Owings Mills, Maryland 21117.

11)   A 2007 Toyota four door passenger vehicle, bearing Maryland registration 8BY X10, VIN 4T1BE46KX7U030616, registered to Sophia Lorraine Warmington, a black female, date of birth of 10-20-1967 at 4509 Lyons Run Circle, apartment 303, Owings Mills, Maryland 21117.

12)   White 1998 Toyota SUV 4 Runner bearing Maryland registration M146009, VIN JT3HN86R2W0187991, registered to Nancy Lee Akers, a white female, date of birth ███████ of 4200 Conowingo Road lot 8, Darlington, Maryland 21034.

13)   2006 blue Lexus bearing Maryland registration 9AE6586, VIN JTHCH96S860010737, registered to Donna Yvette Jones, a black female, date of birth of█████at 8890 Papillion Drive, Ellicott City, Howard County Maryland 21043.

14)   2006 Ford truck bearing Maryland registration T741811, VIN 1FMEU73846UA54015, registered to Tamesha Danielle Copes, a black female, date of birth of ██████ at 2648 Gatehouse Drive, Baltimore, Maryland, 21207.

Your affiants, therefore, pray that a search and seizure warrant be issued authorizing, with the necessary and proper assistance to:

SW-0037

ELH-13-0342

A: Enter and search the person (s), premises, curtilage and any and all outbuildings on the premises;

B: Search the person(s) and clothing of any and all persons found in or upon said premises who may be participating in violations of the statutes herein before cited;

C: Open and search any and all safes, boxes, bags, compartments or things in the nature thereof found in or upon said premises or person(s);

D: Seize all evidence, paraphernalia and money used in, or incidental to, the conduct or operation of controlled dangerous substances violations, found in or upon said premise and person(s) in close proximity to contraband, controlled dangerous substances or controlled dangerous substance paraphernalia;

E: Seize and examine by persons qualified to conduct said examinations and in a laboratory setting any and all electronic data processing and storage devices, cellular phones, computers and computer systems, including central processing units and peripheral storage devices such as fixed discs, external hard discs, floppy disc drives and diskettes, tape drives and tapes, optical storage devices, optical readers and scanning devices, CD ROM drives and compact discs and related hardware, operating logs, software and operating instructions or operating manuals, software and programs used to communicate with other terminals via telephone or other means and any computer modems, monitors and printers which may contain evidence related to controlled dangerous substance violations and answering machine and answering machine tapes;

F: Seize articles of personal property tending to establish or corroborate the identity of the person or persons in control of the premises consisting of and including, but not limited to, utility company receipts, rent receipts, canceled mail, motor vehicle information and keys;

G: Seize any and all assets or property reasonably believed to be the proceeds or income derived from violations of the controlled dangerous substances laws;

H: Arrest all person(s) found in or upon said premise who may be participating in violations of the statutes herein before cited, and;

I: Bring said person(s), evidence and paraphernalia before me, the subscriber or some other Judicial Officer of the State in and for the County aforesaid, to be dealt with and disposed of according to law;

38

ELH-13-0342

SW-0038

SUBSCRIBED AND SWORN TO, this __14__ day of June, 2013,  at ___6.15___ AM/PM

_____                    _____
Detective A. Penman (# 579)                            Detective T. Gregory (# 656)

_____
Detective N. Miranda (# 2271)


    BEFORE Me, A District Court Judge of the State of Maryland, in and for Harford County, this __14__ Day of June, 2013, personally appeared Detective A. Penman (#579) Detective T. Gregory (#656) and Detective N. Miranda (#2271) personally known to me or properly identified, and made oath that the contents of the foregoing application and affidavit are true and correct.

_____
                    JUDGE

SW-0039

ELH-13-0342