### AFFIDAVIT IN SUPPORT OF THE APPLICATION FOR THE EX-PARTE ORDER FOR INTERCEPTION OF TELEPHONIC / ELECTRONIC WIRE COMMUNICATIONS CONVERSATIONS, SHORT MESSAGING SERVICE (SMS), MULTIMEDIA MESSAGING SERVICE (MMS) BY LYNDON FACISCO MILLER OVER TELEPHONIC LINES (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 AND ANY ADDITIONAL LINES UTILIZED BY LYNDON MILLER.

In support of the attached Application for Order to use certain electronic devices for the purpose of intercepting and recording certain electronic/wire communications and oral communications between persons as specified therein, and more particularly a statement of facts and circumstances concerning the observations described in said application that have been, are being, and are about to be committed, your affiants, Detective Aaron Penman, Detective Thomas Gregory of the Harford County Sheriff's Office, and Detective Neil Miranda of the Maryland State Police, all currently assigned to the Harford County Task Force, each being duly sworn according to law, depose and say:

### YOUR AFFIANTS BACKGROUND AND EXPERTISE:

**The name of your first affiant is Detective Aaron Penman.** Your affiant Penman has been a member of the Harford County Sheriff's Office for over thirteen years. Prior to that, your affiant was employed as a correctional officer at the Harford County Detention Center for the Harford County Sheriff's Office and United States Marine Corps as an infantry machine gunner.

Your affiant Penman has successfully completed a six-month Maryland Police Training Academy instructed by the Harford County Sheriff's Office training division and mandated by the Maryland Police Training Commission. During that course of instruction, your affiant Penman received specialized training in the identification and investigation of controlled dangerous substances violations. After completing the Training Academy, your affiant Penman was assigned to the Criminal Patrol Division for four years, during which time he made a large amount of arrests for violations of controlled dangerous substances laws. Next, your affiant Penman was assigned for approximately one year with the Harford County Sheriff's Office Gang Suppression Unit as an investigator of violent organized gang crime.

Your affiant Penman is currently assigned to the Harford County Task Force and

1

many of whom are still unknown to your affiants at this time.

**2. UNDERCOVER POLICE BUYS:** During the course of an investigation, an introduction of an undercover police officer into the organization was discussed and may be possible. This would allow your affiants to obtain firsthand knowledge about the organization. Further, while in this role, the undercover police officer purchases controlled dangerous substances. This investigative technique is useful in obtaining evidence and a solid case against the person from whom the undercover purchases were obtained, but gives very little insight into the infrastructure of the organization. Only electronic interception of telephonic communications of the **LYNDON FACISCO MILLER OVER TELEPHONIC LINES (570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344 and any ADDITIONAL telephone numbers utilized by LYNDON FACISCO MILLER** can provide additional information i.e., co-conspirators, suppliers, facilitators, meeting places, financiers, location of evidence, et cetera.

**3. SURVEILLANCE:** Your affiants believe that surveillance would not provide any additional information as to the upper echelon of the organization or the activity which takes place out of the view of law enforcement. While some important information has been successfully gathered by using this method, it has failed to significantly advance the investigation. Further, surveillance has proven to be difficult.

**A. STATIONARY SURVEILLANCE:** As mentioned above, stationary surveillance would not provide identification of all co-conspirators, suppliers of cocaine, heroin or marijuana, their roles within the organization, or any evidence toward the success of this investigation. Further, even if surveillance were able to determine the true identity of a co-conspirator, that alone would not be enough evidence to successfully prosecute that individual. Further, if your affiants were to approach any neighbors for permission to utilize their residence or rooftops for surveillance, this would surely jeopardize the investigation since it is not known which neighbors may be involved with the suspect in this illegal drug distribution organization, and surely word may innocently get out that police are watching someone in the area.

In addition, Lyndon MILLER'S residence is located in the Owings Run apartment complex. This development is a private gated community, meaning to gain access to the

complex, you must enter through a security gate. As a drug dealer, this secured community is advantageous for MILLER and proves difficult to conduct surveillance.

Your affiants feel that any information or assistance gained by the property management may cause a risk to the case. In the past, investigators have found that property managers are sometimes associates of members of their communities.

B. **MOBILE SURVEILLANCE**: To date, the mobile surveillance in this investigation has provided little additional information which allows your affiants to further identify all participants involved in this conspiracy scheme, and has in some instances possibly compromised the secrecy of the presence of police personnel. Your affiants have been able to conduct mobile surveillance; however, the results have not determined the exact roles of the individuals observed, or exactly what activity is taking place.

Your affiants know that conducting a large amount of mobile surveillance on the same subjects day after day significantly increases the possibility of the targets discovering that they are under investigation. Additionally, even if targets are able to be observed meeting with suspected co-conspirators, the nature of the meeting will not be entirely understood.

In addition, MILLER'S habits, which are very slow, make it difficult to conduct surveillance. Further, MILLER is continually renting new cars each week. Without the assistance of an electronic interception of telephonic communications, further surveillance may prove to be difficult.

4. **FINANCIAL INVESTIGATION**: Your affiants have conducted a financial investigation on LYNDON FACISCO MILLER. This investigation has revealed that he has no reported Maryland wage history. He appears to be living and spending money beyond his means based on this lack of reported income. This aspect of the investigation, however, has not and rarely does allow investigators to see into the intricacies of a distribution organization.

5. **DIALED NUMBER RECORDERS**: A Dialed Number Recorder /Pen Register (DNR) has been placed on the telephone lines **(570) 540-0509, (443) 545-4592, (301) 501-2915, (302) 354-5798, (620) 388-3344** associated to and utilized by LYNDON FACISCO MILLER. Your affiants have also ascertained certain cellular use patterns from this information. This information, however, does not provide your affiants with

ELH-13-0342

W1-0048