IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Criminal No. ELH-13-00342 |
| LYNDON FACISCO MILLER : | |
| : | |
| Defendant : | |

...o0o...

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS WIRETAP EVIDENCE

Now comes the United States of America by its attorneys, Rod J. Rosenstein, United States Attorney for the District of Maryland and Christopher J. Romano, Assistant United States Attorney and hereby files this response in opposition to the Defendant's Supplemental Motion To Suppress Wiretap Evidence.

**I.   FACTUAL AND PROCEDURAL SUMMARY OF THE CASE**

On September 22, 2014, the Defendant filed a supplemental motion to suppress wiretap evidence.  Document # 117.  In his motion the Defendant seeks to suppress "all evidence obtained by the government via telephone lines (251) 421-4575; (443) 252-1294; (724) 255-8960; and (302) 388-8195." Def. Mtn. at 2.  In support of his motion, the Defendant claims there was a lack of probable cause and the necessity requirement was not met.  He also argues that the good-faith exception does not apply.

**II.   ARGUMENT:**

      **(A)   The Affidavit Set Forth Ample Probable Cause
        And Established Necessity.**

On May 6, 2013, members of the Harford County Narcotics Task Force (HCNTF)

1

submitted a 48 page affidavit in support of an application for authorization to intercept wire and electronic communications of the Defendant for five (5) identified cellular telephones, as well as "any additional lines utilized by Lyndon Miller."  *See* Ex. 3 to Defendant's motion.  The Defendant acknowledges that "law enforcement had information that the Defendant had used certain telephone numbers in relation to illegal activity," Def. Mtn. at 5, and  that even "[a] cursory reading of the Affidavit demonstrates that the government had information that Defendant was using specific telephone lines in relation to illicit activity."  Def. Mtn. at 6. Defendant argues that because there was no specific mention of telephone lines (251) 421-4575; (443) 252-1294; (724) 255-8960; and (302) 388-8195 in the affidavit that interception of those lines was not proper.

In support of this mistaken belief, Defendant not only misquotes 18 U.S.C. § 2518 (3)(d)[1] but fails to recognize that there is an exception to 18 U.S.C. § 2518(3)(d), *viz.* 18 U.S.C. §2518(11).  More significantly, it is <u>state</u> law, rather than federal law, that controls with regard to the wiretaps at issue here.  *See* 18 U.S.C. § 2516(2), *United States v. Glasco*, 917 F.2d 797, 799 (4th Cir. 1990); *United States v. Bullock*, 203 F.3d 823, at *4 (4th Cir. 2000) (unpublished); *United States v. Harris*, 719 F.Supp.2d 616, 619 (D. Md. 2010).

The section of Maryland's wiretap law that is relevant here is Md. Cts. Jud. & Pro. § 10-408(a)(2)(ii) which provides as follows:

---

[1] 18 U.S.C. 2518 (3)(d) actually states: "<u>except as provided in subsection (11)</u>, there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person." (Emphasis added).

(ii) In the case of an application authorizing the interception of a wire or electronic communication, a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted is <u>not</u> required if the application:

1. Is by an investigative or law enforcement officer;

2. Is approved by the Attorney General, the State Prosecutor, or a State's Attorney;

3. Identifies the individual believed to be committing the offense and whose communications are to be intercepted;

4. Makes a showing that there is probable cause to believe that the individual's actions could have the effect of thwarting interception from a specified facility; and

5. Specifies that interception will be limited to any period of time when the investigative or law enforcement officer has a reasonable, articulable belief that the individual identified in the application will be proximate to the communication device and will be using the communication device through which the communication will be transmitted.

(Emphasis added).

The affidavit presented to Harford County Circuit Court Judge Angela Eaves on May 6, 2013, sought to intercept not only cell phone calls over the enumerated lines specified in the affidavit but "any additional lines utilized by Lyndon Miller," Def. Ex. 3 at 1, 36-37, 41-45, 47, and conformed in all respects to Md. Cts. Jud. & Pro. § 10-408(a)(2)(ii). Essentially, what was being sought by the investigators, and what was authorized by Judge Eaves, *see e.g.* Def. Ex. 4 at 4-5, was a "roving wiretap,"[2] with regard to cellular telephones utilized by the Defendant, but not known to investigators at the time of the initial application and authorization.

In support of the request to utilize a roving wiretap the affiants with the HCNTF set forth in their May 6, 2013, affidavit detailed information to support such the request, including informing Judge Eaves that:

---

[2] "Roving wiretaps" are also commonly referred to as "writing for the person," as opposed to writing for the phone.

- "MILLER is utilizing at least three phones to communicate with members of this illegal drug organization."  Def. Ex. 3 at 9.

- "This investigation has revealed MILLER is careful to avoid detection by law enforcement and is cognizant of some of the techniques used by law enforcement."  Def. Ex. 3 at 9.

- "Dating back to 2011, that Lyndon MILLER has almost constantly rented vehicles each week", Def. Ex. 3 at 16, which investigators knew through training, knowledge and experience was to avoid detection.

- Miller's incorrectly informed the confidential informants to whom he sold drugs that his name was "Charlie" and that he lived in Cecil County.  Def. Ex. 3 at 18.  Det. Penman, one of the affiants, stated that this was a common practice for drug dealers in order to maintain anonymity and provide security if the buyers were to cooperate with law enforcement.

- Miller's use of multiple phones and the confidential informants informing law enforcement that Miller routinely changes phone numbers.  Def. Ex. 3 at 19.

- "[S]ubscriber information was requested for each phone line believed to be used by MILLER.  The inquiry revealed that each phone is not subscribed in his name.  Early indications are that the phones used by MILLER are over the counter phones that require no identification to purchase.  Your affiants know that drug dealers often obtain pre-paid cellular telephones that are not subscribed in the true identity of the user, nor their true address as an additional effort to void police detection."  Def. Ex. 3 at 19.

- "[D]rug dealers often change phone numbers to thwart the risk of identification and police investigation, such as a wiretap."  Def. Ex. 3 at 19.

Indeed, this last statement is precisely what is contemplated in Md. Cts. Jud. & Pro. § 10-408(a)(2)(ii), as well as 18 U.S.C. § 2518(1)(b)(11).  Based on the information presented by the affiants, Judge Eaves determined that the Defendant was engaged in narcotics trafficking, his multiple use of cell phones, including phones that were not subscribed to him, and his routinely changing cell phone numbers, all established both probable cause as well as the necessity to authorize the use of a roving wiretap.

Defendant further argues that Judge Eaves' order authorizing the wiretap operated as a general warrant, violating the particularity requirement of the Fourth Amendment. Def. Mtn. at 5. 18 U.S.C. § 2518(1)(b)(ii) specifically exempts roving wiretap authorization obtained pursuant to § 2518(11) from the particularity requirement. Moreover, Defendant's argument is contrary to well-established case law. *See United States v. Petti*, 973 F.2d 1441, 1445 (9th Cir. 1992) (warrant issued pursuant to federal statute authorizing roving wiretap surveillance met Fourth Amendment requirements, even though it did not specifically describe telephone facilities from which conversations were to be intercepted); *United States v. Gaytan*, 74 F.3d 545, 553 (5th Cir. 1996) ("*Petti* noted that § 2518 permits only surveillance of telephone facilities used by a speaker identified in the wiretap order and excuses the identification of particular telephone facilities only if the government establishes that the person to be intercepted has attempted to evade surveillance by changing facilities. *Petti*, 973 F.2d at 1445. We find *Petti* persuasive and join the Ninth Circuit in finding the roving wiretap provision constitutional."); *see also, United States v. Bianco*, 998 F.2d 1112, 1122 (2nd Cir. 1993) (statute authorizing "roving bug" electronic surveillance satisfies particularity requirement of Fourth Amendment).

Nor does the wiretap statute obligate the government to submit additional information to the authorizing judge for cell-phone numbers obtained pursuant to a roving wiretap. *United States v. Holland*, 2014 WL 2426164, *10 (D.DC 2014). Indeed, as was noted by the court in *United States v. Savoy*, 883 F.Supp 2d, 101,116 (D.DC 2012) "Congress contemplated the roving surveillance of suspects who…use cloned cellular phones and changed numbers frequently to avoid detection." The roving wiretap thus authorizes the Government to intercept any number connected to a particular individual, even if they cannot identify the number they are tracking. *Id.*

Here, once the agents were able to identify the additional cell phone numbers being used by the Defendant, they sought and obtained authorization to intercept those numbers. *See* Government Ex. 1-4. Moreover, in the renewal affidavit submitted to Judge Eaves on June 4, 2013, Def. Ex. 2, they not only informed her of those numbers, Def. Ex. 2 at 17-19, 20-21, 22-24, 25-26, but they sought and received continued authorization to intercept those phones as well.

### (B) Assuming *Arguendo* That The Orders For The Phones Were Deficient, The Good Faith Exception Applies.

Even if this Court were to conclude that Judge Eaves' orders were deficient, which they were not, the exclusionary rule does not apply when law enforcement acts in objectively reasonable reliance on a warrant later held invalid. *See Davis v. United States*, 131 S. Ct. 2419, 29 (2011); United *States v. Leon*, 468 U.S. 897, 922 (1984). As the Government has previously pointed out, *Leon* has been applied to admit electronic surveillance evidence. *See United States v. Brewer*, 204 Fed. Appx. 205 *3 (4th Cir. 2006) (unreported). *See also, United States v. Moore*, 41 F.3d 370 (8th Cir. 1994) (good faith doctrine required that suppression of wiretap evidence be denied, despite defect in order allowing electronic surveillance).

The Defendant argues that "[i]n this case Judge Eaves wholly abandoned her judicial role and served merely as a rubber stamp for the government. Cursory reading of the Affidavit demonstrates that the government had information that Defendant was using specific telephone lines in relation to illicit activity and that there was no mention of telephone lines (251) 421-4575; (443) 252-1294; (724) 255-8960; and (302) 388-8195 so as to justify their interception." Def. Mtn. at 6. Of course there was no mention initially of these four lines because they were unknown at the time that the May 6, 2013, affidavit was submitted to Judge Eaves. It was only after these numbers were discovered being used by the Defendant to engage in drug trafficking

6

that they were intercepted, which was consistent with the authorization by Judge Eaves when she approved interception not only over the lines identified in the affidavit, but "any additional lines utilized by Lyndon Miller."

As for Defendant's surmise that "whether Judge Eaves even bothered to read the Affidavit is questionable given that the Affidavit was sworn out before her on May 6, 2013 at 3:05 pm. *See* Exh. 2 at 48 (sic).[3]  Curiously, she issued the Order at the exact same time.  See Exh. 3 at 5 (sic).[4]  Either she read, digested and understood the 48-page Affidavit all within one minute or she just rubber-stamped the government's request." Def. Mtn at 6.  Not only is this argument both speculative and insulting, it demonstrates a basic ignorance of how courts review these matters.  As <u>this</u> Court is well-aware, copies of the affidavit, application and proposed orders are submitted in advance to the judge who is considering the matter.  Only when that review is completed by the judge do the affiants appear, are sworn, and the documents executed.  That procedure was followed here, contrary to Defendant's suggestion otherwise.  There is absolutely no evidence to support Defendant's claim that Judge Eaves must have spent only one minute reviewing the documents, much less that she just "rubber-stamped" the Government's request.

---

[3] According to Defendant's ECF filing Exhibit 2 is actually the June 4, 2013 affidavit.  Presumably, Defendant is referencing his <u>Ex. 3.</u>

[4] Again, according to Defendant's ECF filing Exhibit 3 is the May 6, 2013 affidavit.  Presumably, Defendant is referencing his <u>Ex. 4.</u>

### III. CONCLUSION

For all of the above reasons, the Government respectfully requests that the Defendant's motion be denied.

                                             Respectfully submitted,

                                             ROD J. ROSENSTEIN
                                             United States Attorney
By:                                        _____/s/_____
                                             Christopher J. Romano
                                             Assistant United States Attorney
                                             36 S. Charles St., 4th Fl.
                                             Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this <u>29th</u> day of September, 2014, a copy of the foregoing Government's Response to Defendant's Supplemental Motion To Suppress Wiretap Evidence was electronically filed with notice to counsel of record:

                 _____/s/_____
                 Christopher J. Romano
                 Assistant United States Attorney